Get Set Organization, Philadelphia City Education Association v. Philadelphia Federation of Teachers, Local No. 3.

Argued January 20, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

 reargument refused February 10, 1972.

*Leonard M. Sagot,* with him *A. Martin Herring, M. H. Goldstein,* and *Ettinger, Poserina, Silverman, Dubin, Anapol and Sagot,* for appellant.

*Peter Hearn,* with him *J. Anthony Messina, James T. Giles,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. JUSTICE EAGEN, December 20, 1971:

In this case we are asked to review the propriety of the action of the lower court in overruling preliminary objections to a complaint in equity seeking injunctive relief. We agree with the court's disposition and accordingly affirm its decree.

This action arose from a dispute between rival employee organizations both of which seek to represent the employees of the Get Set Day Care Program in collective bargaining negotiations with the School District of Philadelphia.

On September 5, 1970, the parties agreed to settle then pending litigation[1] by entering into a stipulation which was subsequently approved by the court and filed of record. In this stipulation both organizations agreed that the School District of Philadelphia should cause the American Arbitration Association to conduct an election on September 18, 1970, among the employees of the Get Set program to ascertain which of the parties the employees desired as their collective bargaining representative. Thus the case was marked as settled, discontinued and ended.

The election was held on the designated day and thereafter on October 6, 1970, AAA certified results showed that the Philadelphia City Education Association (PCEA) was the winner. On October 26, 1970, the Board of Education of the School District of Philadelphia passed a resolution recognizing PCEA as exclusive bargaining agent. Thereafter, on October 27th appellant, Philadelphia Federation of Teachers (PFT), filed with the Pennsylvania Labor Relations Board

---

[1] *Philadelphia City Education Association v. School District of Philadelphia,* August Term, 1970 No. 2456. The Philadelphia Federation of Teachers was an intervenor-defendant in the case.

(PLRB) a petition requesting a new election based upon an alleged thirty percent showing of interest as evidenced by signed authorization cards.

On October 30, 1970, PCEA filed a complaint in equity seeking a preliminary injunction which would direct the PFT to adhere to the stipulation of September 5th and not to proceed with its petition before the Labor Relations Board nor to interfere with the representational rights of the Get Set employees as determined by the most recent election. PFT countered with preliminary objections, contesting, inter alia, the jurisdiction of the court to pass on the dispute. These objections were overruled and PFT filed this appeal.[2]

The issue in this case is basically a narrow one; whether the lower court has jurisdiction to supervise a stipulation which it approved in the course of terminating litigation then pending before it. This, in turn,

[2] Shortly before argument of the instant case was heard by this Court, this dispute flared up in another aspect on another legal front. In response to the joint request for certification by the PCEA and the School District the PLRB on January 8, 1971, notified counsel for the PCEA by telegram that the Board had tentatively fixed the week of February 8, 1971, as a time when a date would be set for the holding of an election to determine whether the professional employees wished to be included in the proposed unit with non-professional employees. On January 11, 1971, PCEA filed a petition in the Court of Common Pleas of Philadelphia to set aside this action of the PLRB on the grounds that the ordering of a new election precluded all rights of PCEA to certification as the collective bargaining agent under the stipulation and because it interfered with our deliberations in the present matter. The PFT filed preliminary objections which were sustained by the lower court on the grounds that it did not have jurisdiction and venue over the parties and subject matter and because the order of the PLRB was not final and appealable. An appeal was then taken to the Commonwealth Court which, in an opinion filed September 23, 1971, dismissed the same on the ground that the action was premature since the telegram did not constitute an order appealable under the provisions of the Public Employe Relations Act.

depends on whether the court had jurisdiction ab initio and appellant's argument compels at the outset scrutiny of this question.

Appellant's principal contention is that from and after the passage of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq., the Labor Board became the exclusive agency for deciding matters of representation, thus displacing the jurisdiction of the lower court to entertain this action.[3]

This result is reached by asserting that the authorization to the PLRB contained in Article V, §1101.501 to "exercise those powers and perform those duties which are specifically provided for in this act," made effective immediately by Article XXIII, had the effect of triggering the simultaneous operation of another section, namely, the provisions of Article VI concerning

---

[3] By the terms of its enactment the provisions of the Public Employe Relations Act became effective on October 21, 1970, with the pertinent exception of Article V which took effect immediately. Article V provides the following:

"Section 501. The board shall exercise those powers and perform those duties which are specifically provided for in this act. These powers and duties shall be in addition to and exercised completely independent of any powers and duties specifically granted to it by other statutory enactments.

"Section 502. The board shall have authority from time to time to make, amend and rescind such rules and regulations as may be necessary to carry out the provisions of this act. Such rules and regulations shall be effective upon publication in the manner which the board shall prescribe.

"Section 503. The board shall establish after consulting representatives of employe organizations and of public employers, panels of qualified persons broadly representative of the public to be available to serve as members of fact-finding boards."

Article XXIII of PERA states: "Section 2301. This act shall take effect in ninety days except that the provisions of Article V and the amnesty provisions of the repealer shall take effect immediately."

representation elections for public employees since one of the primary powers and duties of the Labor Board is to conduct such elections. We disagree with such an interpretation.

Considered separately the language of §1101.501 seems explicit enough. However, construing this same language in the context of the remainder of the statute, as we must, what was latently ambiguous becomes obviously so. It is to be noted that Article VI contains provisions which deal with more than just the powers and duties of the Board; matters of decertification of employee representatives and grievance procedures are also treated therein. To follow appellant's construction would make some parts of the statute operational while others lie dormant awaiting the effective date. But the canon of construction that every law shall be construed, if possible, to give effect to all its provisions will not brook such a result in the instant case. See 46 P.S. §551, and *Lynch v. Owen J. Roberts School District,* 430 Pa. 461, 244 A. 2d 1 (1968).

Further, the argued for effect of the command of Article V, §1101.501 cannot be isolated simply to certain sections of Article VI. The logic of appellant's contention must run its course and that logic demands that wherever a power or duty of the Labor Board be found in the Act, it too must be exercisable immediately. In the face of such a situation, confusion and uncertainty in the practical application of the law would result and the possible problems of interpretation would be manifold. By way of illustration, Article XIII, §1101.1301 empowering the Labor Board to prevent any unfair labor practices would clearly be operative while Article XII, §1101.1201 which contains a listing of those unfair practices arguably might not be since the provisions found therein are neither "powers" nor "duties" to be exercised by the Board, but instead are commands to public employers and employees. But plainly

the latter provision is ancillary to the former, informing it with meaning. Logic demands that since the enumeration of unfair practices is so intimately bound up with the Board's power to prevent them that §1101.-1201 should also be operative; otherwise it is the cart before the horse. But to construe the statute in this manner, i.e., non-power or duty provisions becoming operative as corollaries or modifiers of power and duty sections, would soon reduce the legislative imperative that the act shall take effect in ninety days to an empty formalism.

Finally, it was only with the passage of the Public Employee Relations Act, supra, that such employees were for the first time given the comprehensive collective bargaining rights outlined in Article IV, §1101.-401.[4] By appellant's own theory, these rights, being neither powers nor duties of the Labor Board, would be bound by the ninety-day provision. Hence it would make for a most curious result for the Labor Board to be at once fully operational while the very objects of this legislation, the public employees, were waiting for their rights to vest.[5] To give an unreasonable or absurd con-

---

[4] This section provides: "It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement."

[5] Additionally, it should be noted that the Labor Board did not accept any representation or joint request for certification petitions until October 21, 1970. Thus the administrative agency appears to have agreed with appellee's interpretation of the act. "[I]t is true . . . that an administrative body may interpret the statute which confers upon it duties and functions, and its construction is persuasive upon the courts because it is the body entrusted with the execution of the statute . . . nevertheless such a

struction violates the fundamental rules of statutory interpretation. *Stollar v. Continental Can Co.,* 407 Pa. 264, 180 A. 2d 71 (1962).

It has been written that it is the duty of the court to harmonize or reconcile all parts of a statute, including apparent incongruities or conflicting or inconsistent parts, so that effect may be given to each and every part. 34 P.L.E. Statutes, §144. Only by restrictively interpreting Article V as an effort to empower the Labor Board to promulgate rules and regulations pursuant to PERA and to establish fact-finding boards in advance of the onslaught of petitions and joint requests, can we fulfill this duty in the instant case.

Since the lower court assumed jurisdiction of this case during the interim between the passage of PERA and its effective date, it follows from the case law and treatises that jurisdiction would be retained until the cause was completely determined.[6]

Such continuing jurisdiction in no way hinges on whether relief is available or not to appellee.[7] As Mr.

___

body cannot enlarge or diminish its own jurisdiction under the statute by erroneous construction, and determinations of this sort are always subject to judicial review." *Grime v. Department of Public Instruction,* 324 Pa. 371, 376, 188 A. 337 (1936).

The Labor Board filed its rules and regulations for administering the Public Employe Relations Act, supra, on October 23, 1970. See Pennsylvania Bulletin, Vol. 1, No. 16, Saturday, October 24, 1970.

[6] "[O]nce the jurisdiction of a court attaches, it exists for all times until the cause is fully and completely determined." *Com. ex rel. Milne v. Milne,* 149 Pa. Superior Ct. 100, 104, 26 A. 2d 207 (1942). See also, 20 Am. Jur. 2d §147.

"As a general rule, jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance." 10 P.L.E. Courts, §21.

[7] Appellant strenuously urges that despite the stipulation and subsequent election, it has a substantive right under the PERA to another election [which no injunction can lawfully prevent] because there was no employee representative in existence on Janu-

Justice JONES wrote in *Studio Theaters, Inc. v. Washington,* 418 Pa. 73, 77, 209 A. 2d 802 (1965):

"The test of jurisdiction is whether the court has *power* to enter upon the inquiry [citations omitted].

"In Zerbe Township School District v. Thomas, 353 Pa. 162, 44 A. 2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry,* not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case. . . ."*

Our court acknowledged the continuing control of inferior courts on litigation which is compromised or settled with their approval when we said in *Advanced Management Research Inc. v. Emanuel,* 439 Pa. 385, 391-92, 266 A. 2d 673 (1970): " '[A] party seeking to enforce an agreement compromising pending litigation is not at liberty to institute in any court any action he sees fit; especially is this true as here where the agreement has been in part performed. A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement thereafter be controlled. Otherwise,

ary 1, 1970, (See Article VI §1101.602(b)) and because the unit here is not appropriate since it contains a mixture of professional and non-professional employees (Article VI, §1101.604). We do not decide the merit of these contentions.

the compromise, instead of being an aid to litigation, would be only productive of litigation as a separate and additional impetus'." In *Melnick v. Binestock*, 318 Pa. 533, 537, 179 A. 77 (1935), the Court pertinently observed: "[E]quity does not lose its grasp on that subject matter even though an agreement of compromise or settlement affected it. Where disputes arise as to the compromise, that court, by petition or otherwise, must interpret it and order what shall be done."

Finally, we believe appellant's reliance on the decision in *West Homestead Borough School District v. Allegheny County Board of School Directors*, 440 Pa. 113, 269 A. 2d 904 (1970) is misplaced for that case is inapposite. Involved there was an equity action brought by a school district against the county board seeking a mandatory injunction applicable to procedures then being implemented by the board under the Supplemental Reorganization Act supplement to the Public School Code of 1949. The Court held that the preliminary objections to the complaint should have been sustained since the statute involved provided for exclusive administrative review by the State Board of Education with appeal of final action taken by that body to a court of law.

In *West Homestead*, supra, the remedy was at all times in existence while here it became effective only after the stipulation was approved and election held.

Also distinguishable is any analogy to the myriad of labor cases in which this Court has found that the National Labor Relations Board indeed had, or arguably had, jurisdiction of the issues, thereby preempting any state court jurisdiction. See, e.g., *Terrizzi Beverage Company v. Local Union No. 830*, 408 Pa. 380, 184 A. 2d 243 (1962). In these decisions it is an *existing* regulatory scheme which displaces local court jurisdiction, while in the instant case such scheme had yet to take effect.

Decree affirmed. Each side to pay own costs.