499 A.2d 294

**PHILADELPHIA HOUSING AUTHORITY, Appellee,**

**v.**

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.**

**PHILADELPHIA HOUSING AUTHORITY**

**v.**

**COMMONWEALTH of Pennsylvania PENNSYLVANIA LABOR RELATIONS BOARD.**

**Appeal of HOUSING POLICE ASSOCIATION.**

Supreme Court of Pennsylvania.

Argued April 15, 1985.

Decided Oct. 2, 1985.

James L. Crawford, Philadelphia, Miriam L. Gafni, Neal Goldstein, Michael Kleeman, Philadelphia, for appellant.

Kenneth M. Jarin, Patrick Kelly, Miriam L. Gafni, Neal Goldstein, Michael Kleeman, James L. Crawford, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

At issue in the instant case is whether the Philadelphia Housing Authority (hereinafter "PHA") is a public employ-

er under the terms of the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. § 217.1 *et seq.* ("Act 111"). This question arises as a result of the contention of the Housing Police Association (hereinafter "HPA") that its members, the security officers employed by PHA, are covered by the provisions of Act 111.

Procedurally, this case arose as follows. On August 31, 1981, HPA filed a petition seeking to represent the officers employed by PHA pursuant to Act 111. HPA requested an expedited election in accordance with Section 7(c) of the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.1 *et seq.* (hereinafter "PLRA"), which requires the Pennsylvania Labor Relations Board (hereinafter "PLRB") to conduct, upon request, an election before determination of the appropriate unit.[1] The election was held on October 2, 1981 and the ballots were impounded.

On December 22, 1981, a full hearing was held before the PLRB and on March 9, 1982, the hearing examiner issued an order determining appropriateness of the unit and directing canvassing and counting of impounded and challenged ballots. A nisi order of certification was issued on April 1, 1982, certifying HPA as the exclusive representative of the PHA security officers under Act 111.

Thereafter, PHA filed timely exceptions challenging the PLRB's legal conclusions that the officers are "policemen" under Act 111 and arguing that it is not an "employer" within the meaning of Act 111. These exceptions were dismissed in a final order of the PLRB. PHA then appealed

1. Section 7(c) states in pertinent part:
 ... [T]he board shall provide for an appropriate hearing upon due notice, either in conjunction with a proceeding under section eight, or otherwise, and may utilize any suitable method to ascertain such representatives, except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days after such request is filed....
 We have already held that since Act 111 does not set forth procedures for determining apropriateness of the collective bargaining unit, Act 111 should be read *in pari materia* with the PLRA. *Philadelphia Fire Officers Association v. PLRB*, 470 Pa. 550, 369 A.2d 259 (1977).

to the Commonwealth Court. In an opinion by President Judge Crumlish, Jr., for the Commonwealth Court, sitting *en banc*, that court reversed the PLRB on the ground that the PHA was neither the "Commonwealth" nor a "political subdivision of the Commonwealth" and therefore not an employer within the meaning of Act 111. 472 A.2d 1188. The PLRB and HPA were granted appeals by this Court pursuant to Rule of Appellate Procedure 1112.

Appellants contend that the PHA is an agency of the Commonwealth and thereby a public employer within the meaning of Act 111, and the security officers it employs are "policemen" for the purposes of coverage under Act 111. Appellee responds by maintaining that these employees are governed by the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.301 *et seq.* (hereinafter "PERA"). At the heart of this issue is the interpretation of section 1 of Act 111 which provides:

> *Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth* shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their *public employers* concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1 (emphasis added).

The Commonwealth Court found that the security officers fell within the parameters of PERA because the definition of a "public employer" under PERA expressly includes the terms "agency" and "authority"[2] whereas the Act 111

---

2. "**Public Employer**" means the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local,

language in section 217.1, *supra*, is limited to "political subdivision of the Commonwealth" and "the Commonwealth." Appellants' contentions in challenging this result ignore the clear language of Act 111, and disregard the legislative intent.

 In reviewing the result reached by the Commonwealth Court, our attention must initially focus upon the terms and plain meaning of the Act. Where the language of a statute is explicit and clear, it has been a long standing principle of this Court not to disturb the plain meaning of that language by resorting to the rules of statutory construction. *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975); *Davis v. Sulcowe*, 416 Pa. 138, 205 A.2d 89 (1964); *In re Kritz' Estate*, 387 Pa. 223, 127 A.2d 720 (1957); *Commonwealth ex rel. Cartwright v. Cartwright*, 350 Pa. 638, 40 A.2d 30 (1945). A principle of statutory construction is only an aid in determining legislative intent and will not be permitted to change the clear meaning of a legislative mandate. *Rich v. Meadville Part Theatre Corp.*, 360 Pa. 338, 62 A.2d 1 (1948). We therefore begin our analysis of Act 111 by first determining whether section 1 is clear and free of ambiguity as to the public employers included therein so as to alleviate the necessity to employ the principles of statutory construction to ascertain legislative intent.

In *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, (hereinafter *"Philadelphia Fire Officers Association "*) 470 Pa. 550, 369 A.2d 259 (1977), this Court was presented with its first Act 111 interpretation problem.[3] In that case we examined the

State or Federal governments but shall not include employers covered or presently subject to coverage under the act of June 1, 1937 (P.L.1168) as amended, known as the "Pennsylvania Labor Relations Act," the act of July 5, 1935, Public Law 198, 74th Congress, as amended, known as the "National Labor Relations Act."
43 P.S. § 1101.301(1) (Supp.1985).

3. An earlier case, Hartshorn v. County of Allegheny, 460 Pa. 560, 333 A.2d 914 (1975), dealt with the issue whether deputy sheriffs had to seek a PLRB determination of whether they were covered by Act 111,

legislative background of Act 111 along with that of the PLRA and PERA. Act 111 and PERA address collective bargaining within the public sector of the Commonwealth. To focus upon the issues involved, it is necessary to review the legislative background that provided the setting for the enactment of Act 111. In *Philadelphia Fire Officers Association, supra,* we set forth that history which merits repetition here.

The Pennsylvania Labor Relations Act ("PLRA"), June 1, 1937, P.L. 1168, No. 294, 43 P.S. §§ 211.1–211.13, which created the Pennsylvania Labor Relations Board and charged it with the specialized tasks of determining bargaining representatives and conducting hearings on unfair labor practice complaints, excluded from its definition of employers covered by the Act "the United States or the Commonwealth, or any political subdivision thereof, or any municipal authority...." 43 P.S. § 211.3(c). While by virtue of the PLRA and its federal counterpart, the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1973) collective bargaining became the order of the day in the private labor sector, such bargaining in the public sector was in 1937 and for almost thirty years thereafter considered against public policy. The Act of June 30, 1947, P.L. 1183, formerly 43 P.S. §§ 215.1–215.5 (now repealed), made strikes by public employees unlawful, provided that any public employee who struck terminated his employment, and established a grievance procedure. The statute, however, did not provide for bargaining on terms, working conditions or hours of employment, nor did it provide for the selection of a bargaining representative to represent a unit of public employees. The Act of 1947, in short, was not a collective bargaining statute.

In the late 1960's, legislative policy with respect to collective bargaining in the public sector began to change. In 1968, as is well known, the General Assembly of Pennsylvania, faced with a recent history of strikes by

or instead should seek a court determination. It did not involve interpretation *per se* of Act 111.

police and fire personnel which the Act of 1947 was ineffective to prevent, enacted what is today commonly known as "Act No. 111." That Act provides generally for collective bargaining between policemen and firemen and their public employers and, in the event of a bargaining impasse, for compulsory and binding arbitration with no right to strike....

Section 11 of Act No. 111 provides that "[a]ll acts or parts of acts inconsistent herewith are hereby repealed."

Two years later, the Legislature enacted a comprehensive statute governing collective bargaining in the public sector, the Public Employe Relations Act of 1970 ("PERA"), sometimes referred to as "Act 195." This Act, however, excluded from the definition of employees covered by the Act "those employes covered under the act of June 24, 1968 [Act No. 111], entitled 'An act specifically authorizing collective bargaining between policemen and firemen and their public employers ....'" 43 P.S. § 1101.301(2). A separate provision specifically preserved Act No. 111 from repeal. 43 P.S. § 1101.2002 (Supp. 1976–77).

*Id.*, 470 Pa. at 552–54, 369 A.2d at 260–61.

*See also Township of Moon v. Police Officers of Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985). It should be noted that both Act 111 and PERA evolved from the same Report and Recommendations of the Governor's Commission to Revise the Public Employe Law of Pennsylvania (hereinafter *"Hickman Commission Report"*), 1968 Govt. Empl.Rel.Rep. (BNA) No. 251, whose task it was to conduct a thorough examination of the entire spectrum of public employees and employers for the purpose of effectuating changes in the Pennsylvania Public Employee Anti-Strike Act of 1947, Act of June 30, 1947, P.L. 1183, 43 P.S. § 215.1 *et seq.* (repealed). The thrust of the *Hickman Commission Report* was that the discord in the field of public employment could be ameliorated by permitting collective bargaining. *Hickman Commission Report, supra* at E–2.

[Collective bargaining] opens the door to communication; without it an impasse commonly develops before either party has heard an explanation of the other's position. If a new statute did nothing else it should recognize the right of collective bargaining....

*Id.* at E–2.

*See also,* Note, *Recommendations of the Governor's Commission to Revise the Public Employment Law of Pennsylvania: A Preliminary Assessment,* 30 U.Pitt.L.Rev. 161 (1968–69). The legislative acceptance of this thesis represented a public policy determination that collective bargaining should be an element of public employment.

A part of the concept of collective bargaining is the right to strike where negotiations break down and an impasse is reached. *See Tate v. Philadelphia Transportation Co.,* 410 Pa. 490, 190 A.2d 316 (1963); *Mackintosh-Hemphill Division, E.W. Bliss Co. v. Unemployment Compensation Board of Review,* 205 Pa.Super. 489, 211 A.2d 23 (1965). However, there are certain governmental services that are so essential to the public that an interruption in their delivery could not be countenanced for any reason. *Hickman Commission Report, supra* at E–3.

Likewise there can be no right of public employees to strike if the health, safety or welfare of the public is endangered ... Consequently, the legislation we recommend will provide that if a strike is threatened or occurs after collective bargaining has been exhausted, it can begin or continue only so long as public health, safety or welfare are not in danger.

*Id.* at E–3.

Such services are the police and fire protection provided by the governmental unit. *See Township of Moon v. Police Officers of Township of Moon, supra.*

PERA and Act 111 represent in this Commonwealth the legislative judgment that collective bargaining should be adapted to the public sector. Act 111 represents the accommodation of binding arbitration made in recognition of the vital service being performed by the employees covered by

the provisions of that Act. *See Township of Moon v. Police Officers of Township of Moon, supra; Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, supra; see also City of Coatesville v. Commonwealth, Pennsylvania Labor Relations Board,* 77 Pa. Commw. 265, 465 A.2d 1073 (1983); *Flood v. Borough of Canonsburg,* 28 Pa.Commw. 248, 368 A.2d 348 (1977). Both of these statutes must be read in view of this background.

For purposes of determining coverage, Act 111 sets forth a two tier requirement, one directed at who is the public employee, "policemen or firemen" and the other directed at who is the public employer, "a political subdivision of the Commonwealth", and "the Commonwealth." 43 P.S. § 217.-1. In previous decisions we have been called upon to determine whether or not the employees, by virtue of the nature of their services, fall within the purview of Act 111.[4] *Commonwealth v. Commonwealth, Pennsylvania Labor Relations Board,* 502 Pa. 7, 463 A.2d 409 (1983); *Hartshorn v. County of Allegheny,* 460 Pa. 560, 333 A.2d 914 (1975). Here the issue raised is whether the employer is covered under section 1 of Act 111.

The term "political subdivision of the Commonwealth" is not defined within Act 111. We therefore must look to the Statutory Construction Act, 1 Pa.C.S. § 1991. This Act defines political subdivision as

[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district.

1 Pa.C.S.A. § 1991.

**4.** While we do not reach that question in the instant case, it is interesting to note that House Bill 200, which ultimately became subsections (ee) and (ff) of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, § 10, *as amended,* 35 P.S. § 1550(ee), (ff) (Supp. 1985), was amended to give PHA the power to appoint "security officers" rather than "police officers." *See* 1980 Pa.Legis.J.—House 474–83. In contrast subsection (ee) as enacted authorizes a city of the second class to appoint "police officers." 35 P.S. § 1550(ee) (Supp. 1985).

It is conceded by appellants that PHA does not fall within this definition. Thus the issue is narrowed to whether the PHA is "the Commonwealth" for purposes of Act 111 coverage.

Interestingly appellants do not argue that PHA is "the Commonwealth," and it is obvious why they do not, but rather argue that it is an agency or an agent of the Commonwealth. Again Act 111 does not offer a definition for the term "Commonwealth." Resorting again to the Statutory Construction Act we note that it defines that term as "the Commonwealth of Pennsylvania." 1 Pa.C.S. § 1991. Clearly PHA can, by no stretch of the imagination, be considered the Commonwealth of Pennsylvania. A cardinal rule of statutory construction is that we must give terms in a statute the meaning dictated by the context in which they are used. The context for the use of the term "public employer" in Act 111 could not be clearer. Although the broad definition of "Commonwealth" suggested by appellant is required under the language of Act 195, its use in Act 111 would render the express inclusion of "political subdivisions of the Commonwealth" redundant. Such a construction is expressly condemned by our rules of construction. *Colodonato v. Consolidated Rail Corp.*, 504 Pa. 80, 470 A.2d 475 (1983); *Matter of Employees of Student Services, Inc.*, 495 Pa. 42, 432 A.2d 189 (1981); *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979); *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517 (1977); *Daly v. Hemphill*, 411 Pa. 263, 191 A.2d 835 (1963). It is therefore our judgment that section 1 is free of any ambiguity and must be accepted in accordance with its terms.

Assuming *arguendo* that the reference to "the Commonwealth" in Section 1 of Act 111 created an ambiguity which requires further interpretation, we nevertheless find appellants' suggested meaning to be unpersuasive. Appellant HPA relies upon Section 1550 of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, § 10, *as amended,* 35

P.S. § 1550, as the premise of its argument that PHA is an agency of the Commonwealth.[5]

However, this Court has ruled in *T. & R. Painting Co., Inc. v. Philadelphia Housing Authority,* 466 Pa. 493, 353 A.2d 800 (1976), that this language is not conclusive as to the status of a housing authority.[6] Following the direction suggested in *T. & R. Painting Co., supra,* that we look to the intention of the legislation at issue in this case, Act 111, appellants can find no comfort for their position. Even if we were to accept that, for our present purposes, PHA is to be viewed as an agency of the Commonwealth, it does not fall within the definition of "public employer" set forth in Section 1 of Act 111. To interpret "Commonwealth" as embracing all of its component entities would, as has been noted, render the express reference to "political subdivisions of the Commonwealth" redundant.

The basic flaw of appellants' argument is their focus upon the services being performed by the employees seeking inclusion within the parameters of Act 111. Section 1 of Act 111 describes its scope both in terms of the employer as well as the employee. In describing the functions of these employees, the terms "police" and "security" should be given no talismanic quality in this context. Even though a group of employees may perform services which protect the public safety, they do not fall within the purview of Section 1 of Act 111 unless they are also employed to render those services by the public employers described within that section.[7] While the HPA force renders an invaluable service to

5. HPA focuses upon the following language of the Section:
 An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof....
 35 P.S. § 1550.

6. In *T. & R. Painting Co., Inc., supra,* we held that a housing authority was not a Commonwealth agency for purposes of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.101 *et seq.* (repealed; *see now* 42 Pa.C.S. § 701 *et seq.*). To the contrary, we there held it to be a separate and distinct local agency and that actions against it should be initiated in the courts of common pleas.

7. There is an implicit suggestion that PHA security officers substitute for the Philadelphia police in these public housing units. We note

the residents within PHA's housing projects, an interruption of that service does not render the catastrophic event envisioned by Act 111, since the residents of these projects also are entitled to and should receive the protection provided to all other residents of the city by the Philadelphia Police Force. To accept appellants' position would encourage the view that the Philadelphia Police Department could renege upon its obligation to protect these residents with the same degree of efficiency that it protects all of the other residents within the territorial limits of the city. This position we do not condone.

■ From the language of PERA it is clear that the General Assembly intended to give a broad definition to the term "public employer" as used therein. *See* 43 P.S. § 1101.301(1) (Supp.1985), *quoted at* n. 2, *supra.* This Act was intended to cover the entire area of public employment. *See Commonwealth v. Commonwealth, Pennsylvania Labor Relations Board, supra; Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, supra; see also* 43 P.S. § 1101.101 (Supp.1985). Likewise, the use of the restrictive language in Section 1 of Act 111 was also by design. Act 111 was intended to carve out a select group of public employees for special treatment because of the essential nature of the services they perform. *See Township of Moon v. Police Officers of Township of Moon, supra; Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board, supra.* To attempt to superimpose PERA's definition of "public employer" upon Section 1 of Act 111 ignores the clear legislative intent to restrict the applicability of Section 1 not only based upon the service being delivered by the employee but also predi-

that the responsibility for police protection within the city limits, including the housing projects, is vested in the City's police force. *See* Philadelphia Home Rule Charter § 5.5–200, 201, 351 Pa.Code § 5.5–200, 201. The PHA is designed to augment and not to replace the Philadelphia Police Force in these areas. This augmentation is justified by the greater incidence of criminal activity within these areas. To allow the PHA security force to replace the Philadelphia Police Force in these areas defeats the purpose of the creation of this security force.

cated upon the employer supplying that service. *See* 43 P.S. § 217.1 (Supp.1985).

Critical to the effectiveness of Act 111 is its provision for binding interest arbitration which resolves negotiation impasses and supplies through the award of the panel a basis for the continuing employment relationship. 43 P.S. § 217.4 (Supp.1985).[8] Unlike the Commonwealth or one of its political subdivisions, PHA does not have the ability to fund an Act 111 arbitration award since PHA has no power to levy taxes. Thus, the interpretation urged by appellants would create the anomaly that this group of employees would receive the right to interest arbitration without the award issuing therefrom having binding effect.[9] Nevertheless, these employees would be stripped of their right to strike, thereby undercutting the very heart of collective bargaining. *See Tate v. Philadelphia Transportation Co., supra; Mackintosh-Hemphill Division, E.W. Bliss Co. v. Unemployment Compensation Board of Review, supra.* The legislature intentionally limited its definition of "public employer" under Section 1 of Act 111 to avoid such an unfair and absurd result. 1 Pa.C.S. § 1922(1); *Lehigh Valley Co-op Farmers v. Commonwealth, Bureau of Employment Security Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982); *Schaefer v. Hilton,* 473 Pa. 237, 373 A.2d 1350 (1978); *Goodman v. Kennedy,* 459 Pa. 313, 329 A.2d 224 (1974); *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973); *Get Set Organization v.*

**8.** The binding aspect of the arbitration procedure is essential to the legislative scheme. Mandatory binding interest arbitration in the event of a collective bargaining impasse ensures the prompt implementation of terms and conditions governing the employment relationship, thereby compensating for the loss of the right to strike. A constitutional amendment was passed in 1967 to permit this binding procedure. Pa. Const. Art. III, § 31.

**9.** In such a case the arbitration award would be advisory only and, without further legislation by the funding source, meaningless. Pa. Const. Art. III, §§ 24, 31; Association of Pennsylvania State College and University Faculties, 496 Pa. 315, 436 A.2d 1386 (1981); Franklin County Prison Board v. Pennsylvania Labor Relations Board, 491 Pa. 50, 417 A.2d 1138 (1980). The PHA is funded largely by the federal Housing and Urban Development Department. *See* 42 U.S.C. § 1440; 35 P.S. § 1562.

*Philadelphia Federation of Teachers, Local No. 3,* 446 Pa. 174, 286 A.2d 633 (1971); *Stollar v. Continental Can Co.,* 407 Pa. 264, 180 A.2d 71 (1962).

For the above reasons we are satisfied that, from the plain and unambiguous language of Section 1 of Act 111, the term "Commonwealth" as used therein refers only to the Commonwealth of Pennsylvania and not to its agencies, authorities or other component entities and instrumentalities. Moreover, a resort to the rules of statutory construction would also force the same conclusion. Therefore, since by admission the PHA does not fall within the broader term of "political subdivision of the Commonwealth," it clearly does not fall within the definition of "Commonwealth" and thus is not an employer under the terms of Act 111.

Accordingly, we affirm the order of the Commonwealth Court for the reasons stated herein.

LARSEN, J., dissents.