390 Pa. Superior Ct. 31 (1989)
567 A.2d 1103
Elizabeth BLACKWELL, Appellant,
v.
PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION, Appellee.
Supreme Court of Pennsylvania.
Argued November 15, 1989.
Filed December 28, 1989.
*32 Edward F. Silva, Philadelphia, for appellant.
Michael O'Hayer, Paoli, for appellee.
Before CAVANAUGH, MONTEMURO and POPOVICH, JJ.
MONTEMURO, Judge:
In this appeal, we must address an issue of first impression with reference to the Pennsylvania Insurance Guaranty *33 Association Act, Act of Nov. 25, 1970, P.L. 716, No. 232, Art. I § 101 et seq., 40 P.S. § 1701.101 et seq. Although this issue is not without difficulty, we have determined that the trial court correctly resolved it and, accordingly, we affirm.[1]
In March of 1985, appellant Elizabeth Blackwell was involved in an automobile accident while she was a passenger in an auto being operated by Blanche Grebloski. The Grebloski auto was struck by a Ferree Transport tractor trailer being operated by Lee Gilbert. It has been agreed by the parties in this case that Blackwell's injuries are serious and amount to at least $365,000.00 in monetary damages. At the time of the accident, Ferree Transport and Gilbert were insured by a policy issued by the Carriers Insurance Company. The Carriers policy provided for a maximum limit of $6,000,000.00 in liability coverage. During the pendency of the instant lawsuit, Carriers was adjudicated insolvent. As result of Carriers' insolvency, both Ferree Transport and Gilbert became "uninsureds." Thus, Blackwell presented uninsured motorist claims to both her own insurer, Allstate, and to Grebloski's insurer, State Farm. Blackwell thereafter received the maximum amount for uninsured motorist coverage under each of these two insurance policies: $40,000.00 from State Farm and $25,000.00 from Allstate. Blackwell then applied to the Pennsylvania Insurance Guaranty Association ("PIGA") for payment of her claim against the insolvent Carriers.
As our Supreme Court has recently recognized, the Insurance Guaranty Act was "enacted to give a measure of protection to policyholders and claimants who are faced with financial loss because of the insolvency of certain carriers of property and casualty insurance. Section 102(1) of the Act, 40 P.S. § 1701.102(1)." Bethea v. Forbes, 519 *34 Pa. 422, 424, 548 A.2d 1215, 1216 (1988). Some of the stated purposes of the Act relevant in the instant case are to "provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delays in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 1701.102(1). To these ends, the Act provides that PIGA is "obligated to make payment on the extent of the covered claims of an insolvent insurer . . . but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000.00)." 40 P.S. § 1701.201(b)(1)(i). Further, PIGA is prohibited from paying more than the maximum applicable limits of the insurance coverage which had been provided by the insolvent insurance company. 40 P.S. § 1701.103(5)(c). PIGA's obligation to pay a covered claim is also subject to the following provision:
Non-duplication of recovery
(a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy.
40 P.S. § 1701.503(a).
There is no question in the present case that Blackwell's claim is a "covered claim" under the Act, because it stems from a claim against Carriers which remains unpaid due to the insolvency of Carriers. See 40 P.S. § 1701.103(5)(a) ("covered claim" means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer). PIGA's obligation to Blackwell under 40 P.S. § 1701.201(b)(1)(i) is $299,900.00. As we have stated, Blackwell's damages are in excess of $365,000.00, and the applicable maximum limit on the insurance coverage which had been provided by *35 Carriers was $6,000,000.00. The only matter to be resolved is whether PIGA's obligation under 40 P.S. § 1701.201(b)(1)(i) is to be reduced pursuant to 40 P.S. § 1701.503(a), in view of the fact that Blackwell has been able to recover $65,000.00 from other insurance companies as a result of Carriers' insolvency.
Blackwell's arguments supporting the position that no reduction in the $299,900.00 obligation should be assessed are aptly and persuasively presented. Blackwell emphasizes that had Carriers not become insolvent, she would have been able to recover in excess of $365,000.00 due to the severity of her injuries and the $6,000,000.00 maximum liability coverage provided by Carriers. Blackwell argues that PIGA exists to prevent financial loss due to the insolvency of an insurer. Thus, Blackwell contends that providing her with the full $299,900.00 from PIGA will provide her with the type and scope of protection from loss which is consistent with the legislative purpose of the Insurance Guaranty Act.
Although we understand the arguments set forth by Blackwell, it is axiomatic that where the words of a statutory enactment are clear and unambiguous, courts must construe the statute according to its plain and obvious meaning. Philadelphia Housing Authority v. Pennsylvania Labor Relations Board, 508 Pa. 576, 499 A.2d 294 (1985); Garcia v. Community Legal Services Corp., 362 Pa.Super. 484, 524 A.2d 980 (1987). We have carefully reviewed the language of 40 P.S. § 1701.503(a), and have found it to be unambiguous as a matter of law. Section 503(a) provides that "any amount payable on a covered claim under this act" which, in this case, has been determined to be $299,900.00, "shall be reduced by the amount of any recovery" of insurance coverage which has been received by the claimant due to the insolvency of an insurer. In this case, this latter amount equals $65,000.00. When $65,000.00 is deducted from the $299,900.00, PIGA's final obligation is to provide Blackwell with the sum of $234,900.00. Our record indicates that this sum had already *36 been paid to Blackwell by PIGA. If the Legislature had intended the result urged by Blackwell in the present case, they could have easily achieved it by simply stating, in 40 P.S. § 1701.503(a), that "a covered claim under this act shall be reduced by the amount of any recovery . . ." of alternative insurance coverage. This they did not do. Instead, the statute mandates that "any amount payable on a covered claim shall be reduced by the amount of any recovery. . ." of alternative insurance coverage. See 40 P.S. § 1701.503(a) (emphasis added).
There is a dearth of case law in this Commonwealth concerning 40 P.S. § 1701.503(a). The case law which does exist is not relevant to the case at bar. In Sands v. Pennsylvania Insurance Guaranty Association, 283 Pa. Super. 217, 423 A.2d 1224 (1980), the Court held that Section 503(a) was not applicable because, although the claimant before PIGA had recovered under an uninsured motorist provision in a policy of insurance "other than a policy of an insolvent insurer", the coverage had not been provided due to the insolvency of an insurer. See also Bullock v. Pariser, 311 Pa.Super. 487, 457 A.2d 1287 (1983). Instead, the coverage in Sands had been provided due to the fact that one of the individuals involved in an auto accident had been uninsured at the time of the accident. Although the Sands Court found Section 503 inapplicable, the Court did cite with approval the decision rendered in Lucas v. Illinois Insurance Guaranty Fund, 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469 (1977). In Lucas, a tortfeasor had insurance with a maximum coverage limit of $20,000.00. Lucas had recovered a judgment against this particular tortfeasor in the amount of $390,000.00. When the tortfeasor's insurance company became insolvent, Lucas was able to recover $10,000.00 under her own uninsured motorist insurance policy. Her recovery from the Illinois Insurance Guaranty Fund was thus equal to $19,900.00 (limit of tortfeasor's insurance coverage minus $100.00 deductible) reduced by the $10,000.00 Lucas had already recovered as a result of the insolvency of the insurer. The Lucas Court opined:

*37 There is no inconsistency between the "nonduplication" provision and the purpose of the Act. The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent. . . . The difference between the insolvent insurer's policy limits and the amount paid to claimant by his own insurer is made up by the Fund. To permit a greater recovery than would have occurred had the insurance company remained solvent would both extend the Act beyond its purpose and offend public policy by giving the Act an interpretation which results in a windfall judgment.
Id. at 239, 10 Ill.Dec. at 83, 367 N.E.2d at 471 (citation omitted).
We recognize that the Sands decision clearly stands for the proposition that a claimant will never be placed in a better position by virtue of the existence of PIGA than he would have been in had the insurance company not become insolvent. However, it is equally clear that the Legislature did not intend, in enacting the Insurance Guaranty Act, that in all cases a claimant would be placed in the same position he would have been in had the insurance company remained solvent. Even with the existence of PIGA, it was anticipated by the Legislature that some claimants would suffer some amount of financial loss due to the insolvency of an insurer, because PIGA's obligation to a claimant is limited to $300,000.00 less the $100.00 deductible. See 40 P.S. § 1701.201(b)(1)(i). Accord Palmer v. Montana Insurance Guaranty Association, ___ Mont. ___, 779 P.2d 61 (1989).
Blackwell has argued that the decision of this Court in Henninger v. Riley, 317 Pa.Super. 570, 464 A.2d 469 (1983), supports her claim against the PIGA for the full $299,900.00. We disagree. Henninger holds that a claimant may not proceed against PIGA until the claimant has complied with Section 503(a) of the Act by exhausting his claims against other solvent insurers. This decision has little relevancy to the present case, because it is undisputed that *38 Blackwell has satisfied her obligation to exhaust her rights against other solvent insurers.
For all of the foregoing reasons, we affirm the entry of summary judgment in favor of PIGA wherein the trial court determined that PIGA is under no obligation to pay the additional sum of $65,000.00 to Blackwell.
Order affirmed.
NOTES
[1] This is an appeal from the entry of summary judgment in favor of the appellee, the Pennsylvania Insurance Guaranty Association ("PIGA"). Appellant Blackwell instituted the instant declaratory judgment action to obtain a judicial resolution of whether or not the PIGA is obligated to pay the sum of $65,000.00 to Blackwell. The facts underlying this appeal are not in dispute.