597 A.2d 202

**BIG "B" MINING COMPANY, Petitioner,**

**v.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1990.

Decided Aug. 27, 1991.

216

Bruno A. Muscatello, for petitioner.
Diana J. Stares, for respondent.

Before PELLEGRINI and BYER, JJ., and NARICK, Senior Judge.

BYER, Judge.

Big B Mining Company, Inc. (Big B) appeals from an order of the Environmental Hearing Board (EHB) which denied Big B's request for counsel fees and costs which it incurred while successfully challenging the Department of Environmental Resources' (DER) denial of its application for a surface mining permit.

Big B petitioned to recover the counsel fees and costs pursuant to section 4(b) of the Surface Mining Conservation and Reclamation Act (SMCRA), Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. § 1396.4(b). The EHB declined to award fees and costs, holding that section 4(b) of SMCRA applies only to enforcement actions and not to permit proceedings.[1]

■ Big B argues on appeal[2] that the EHB erred as a matter of law in its interpretation of section 4(b), because it relied on the congressional intent of section 525(e) of the Federal Service Mining Control and Reclamation Act (Federal SMCRA), P.L. No. 95-87, 91 Stat. 445, 30 U.S.C. §§ 1201-1328 (1982), the federal counterpart of section 4(b)

1. EHB member Terrance J. Fitzpatrick filed a concurring opinion that agreed with the result but disagreed with the majority's reasoning. The concurring opinion stated that there was no blanket preclusion on the recovery of costs in permit proceedings, but that counsel fees only should be awarded when the DER or a third party acted in "bad faith" against the permittee. The concurring opinion asserted that Big B's petition should be denied because it did not allege that DER acted in bad faith.

2. In absence of bad faith, fraud, capricious action or abuse of power, reviewing courts will not inquire into the wisdom of the administrative agency's action or into the details or manner of executing an agency action. *Slawek v. Board of Medical Education and Licensure,* 526 Pa. 316, 586 A.2d 362 (1991). The test is not whether the order is reasonable but whether it was made "in accordance with law," or violated some other statute applicable to the case. *Id.,* 526 Pa. at 322, 586 A.2d at 365.

of SMCRA.[3]  We agree.

Section 4(b) provides:

Any person having an interest which is or may be adversely affected by any action of the department under this section may proceed to lodge an appeal with the environmental hearing board in the manner provided by law.... The environmental hearing board, upon the request of any party, may in its discretion order the payment of costs and attorney's fees it determines to have been reasonably incurred by such party in proceedings *pursuant to this section.*

(Emphasis added).

This section of SMCRA contains comprehensive rules and procedures which relate to mining permit applications and bond releases, including provisions for hearings, objections and appeals.  This case involved a permit application and DER's improper denial.

The EHB, in its attempt to comply with the spirit of SMCRA,[4] looked to the federal law and its underlying congressional intent to interpret the meaning of section 4(b) of SMCRA.  This was error.

■ When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded in the pretext of pursuing its spirit.  1 Pa.C.S. § 1921(b).

■ It is axiomatic that we cannot rely upon congressional or legislative intent when there is no ambiguity in the statute being interpreted.  *See Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 6, 568 A.2d 931, 934 (1990); *Philadelphia Housing Authority v. Commonwealth, La-*

---

**3.** Section 4(b) of SMCRA is modelled upon section 525(e) of Federal SMCRA.  Pennsylvania, in an attempt to secure primacy over surface mining, implemented its own regulations which meet all necessary minimum requirements set forth in Federal SMCRA.  Section 4(b) is one of these regulations.

**4.** Federal SMCRA is based upon a finding of a need to establish "a nationwide program to protect society and the environment from the adverse effects of surface coal mining operation."  30 U.S.C. § 1202(a).

*bor Relations Board,* 508 Pa. 576, 582, 499 A.2d 294, 297 (1985); *Coretsky v. Board of Commissioners,* 520 Pa. 513, 517–18, 555 A.2d 72, 74 (1980); *Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 29–30, 459 A.2d 464, 473 (1983). Because section 4(b) specifically permits counsel fees and costs incurred in proceedings pursuant to that section, it was improper for the EHB to explore the legislative intent of the federal statute.[5] Under the plain language of the Pennsylvania statute, the EHB may award costs and attorney's fees in permit proceedings as well as in enforcement proceedings.

We reverse the order of the EHB and remand the case for proceedings consistent with this opinion.

## ORDER

We reverse the order of the Environmental Hearing Board and remand the case for proceedings consistent with this opinion.

We relinquish jurisdiction.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. This appeal involves the novel issue of how a Pennsylvania statute passed to mirror federal legislation in order that Pennsylvania agencies could obtain "primacy" in enforcement should be interpreted. Should we apply the "plain meaning" of the words our General Assembly enacted or should we adopt the interpretation given to those words as intended by Congress as evidenced by federal courts prior to its adoption by our General Assembly? Because our General Assembly did not have any legislative intent other than to adopt a statute that mirrored the federal legislation when it enacted the state legislation now under review, I would hold that the

5. In *Croner v. Department of Environmental Resources,* 139 Pa.Commonwealth Ct. 43, 589 A.2d 1183 (1991), we held that a challenge to a state regulation, with a federal counterpart, was not a collateral attack on the federal statute, and thus there was no need to apply federal law to the state action.

proper manner of interpretation is to look at federal intent and interpretation.

The facts that give rise to this appeal are as follows. Big "B" Mining Company (Big "B") applied for a surface coal mining permit which the Department of Environmental Resources (DER) denied[1] because Big "B" failed to establish, as required by 25 Pa.Code § 95.1(b), social and economic justification for discharging mine drainage into a high quality watershed area. On appeal, the Board determined that Big "B" had complied with 25 Pa.Code § 95.1(b) and ordered DER to issue the mine permit. DER then appealed the Board's order to this Court. On February 23, 1989, this Court upheld the Board's determination that DER had abused its discretion in denying the permit application. *Commonwealth of Pennsylvania, Department of Environmental Resources v. Big B Mining Company, Inc.*, 123 Pa.Commonwealth Ct. 591, 554 A.2d 1002 (1989).

Big "B" then filed a petition to recover costs and counsel fees expended in reversing DER's denial of the mine permit application, requesting the Board to exercise its discretion pursuant to Section 4(b) of the Surface Mining Conservation and Reclamation Act (SMCRA), Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. § 1396.4(b), and grant Big "B" an award of $43,875.00. Section 4(b) provides:

> [a]ny person having an interest which is or may be adversely affected by any action of the department under this section may proceed to lodge an appeal with the Environmental Hearing Board in the manner provided by law.... The Environmental Hearing Board, upon the request of any party, may, in its discretion, order the payment of costs and attorney's fees it determines to

---

1. In 1983, DER denied Big "B's" permit application to conduct surface mining operations on a tract of land (Gould site) adjacent to a site for which Big "B" had already been issued a mining permit (Fleming site). In 1985, DER also denied Big "B's" application to re-permit a portion of the Fleming site which had not been mined under its prior permit. Big "B" filed timely appeals in each instance. Both appeals were ultimately consolidated before the Board, which treated the two permit applications as a single application.

have been reasonably incurred by such party in proceedings pursuant to this section.

52 P.S. § 1396.4(b).

The Board, in declining to award costs and fees under that section, held that Section 4(b) applies only to enforcement actions and not to permit proceedings.[2]

The majority finds that because the statutory language of Section 4(b) of the SMCRA is clear and free from all ambiguity, the Board erred in looking to Section 525(e) of the federal Surface Mining Control and Reclamation Act (FedSMCRA), Pub.L. No. 85–87, 91 Stat. 445 (codified as amended at 30 U.S.C. §§ 1201–1328 (1982)), and its underlying congressional intent in denying Big "B" recovery of costs and counsel fees. The majority holds that because Section 4(b) specifically permits counsel fees and costs incurred in proceedings pursuant to that section, it was improper for the Board to explore the legislative intent of the federal statute.

Pennsylvania's SMCRA was enacted in response to the FedSMCRA's "invitation" to the states to regulate surface coal mining on non-federal lands within their borders. 30 U.S.C. § 1253. The federal statutory scheme provides the means for substantial regulatory cooperation between the states and the federal government. *National Wildlife Federation v. Hodel*, 839 F.2d 694, 766 (D.C.Cir.1988); *In re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514 (D.C.Cir.1981). Under the federal scheme, a state is permitted, after an interim period of direct federal regulation, to seek "primacy" (primary jurisdiction) by submitting a proposed regulatory program to the United States

---

**2.** One Board member filed a concurring opinion agreeing with the conclusion of the Board but disagreeing with the Board's reasoning in reaching that result. The concurring opinion stated that it did not believe that the federal regulations provided for a blanket preclusion on the recovery of costs by permittees in permit proceedings, and that permittees should be awarded counsel fees only when the permittee shows that DER or a third party acted in "bad faith" against the permittee. The concurring opinion agreed that Big "B's" petition should be denied because Big "B" did not allege that DER acted in bad faith in denying the permit application.

Secretary of the Interior (Secretary). 30 U.S.C. § 1253. The Secretary approves the state program if it is "in accordance with" the federal statute and "consistent with" the federal implementing regulations. 30 U.S.C. § 1253(a)(1), (3), and (7); 30 C.F.R. § 840.15; 43 C.F.R. §§ 4.1290–4.1328.

To obtain primacy over surface mining regulation in Pennsylvania, therefore, the Commonwealth was required to conform its statutes and regulations to the minimum standards set forth in the FedSMCRA and the federal implementing regulations. See *Bloom v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 101 Pa.Commonwealth Ct. 8, 12, 515 A.2d 361, 363 (1986). The Commonwealth of Pennsylvania originally submitted a proposed regulatory program to the Secretary in 1980. When this program was rejected, the Commonwealth sought to submit a revised proposal as permitted under the FedSMCRA. Approval of Pennsylvania's regulatory program by the Secretary was conditioned upon, *inter alia,* the adoption of a costs and fees provision that would be "no less effective than 30 C.F.R. § 840.15 and in accordance with section 525(e) of the [FedSMCRA]." 47 Fed.Reg. 33058 (July 30, 1982). Accordingly, the General Assembly amended four existing statutes,[3] including Section 4(b) of the SMCRA, and DER's Environmental Quality Board promulgated five new chapters of regulations at 25 Pa.Code §§ 86–90.

Because state regulatory programs must be in conformity with minimum federal standards in order for a state to obtain primacy over surface mining regulation, Section 4(b) closely tracks that of its federal counterpart, Section 525(e) of the FedSMCRA. Section 525(e) provides:

**3.** The four statutes are the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, added December 3, 1970, P.L. 834, No. 275, *as amended,* 71 P.S. §§ 510–1—510–108; The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§ 691.1—691.1001; The Bituminous Mine Subsidence and Land Conservation Act of April 27, 1966, Sp.Sess., P.L. 31, *as amended,* 52 P.S. §§ 1406.1—1406.21; and the SMCRA.

Whenever an order is issued under this section, or as a result of any administrative proceeding under this Act, at the request of any person, a sum equal to the aggregate amount of all costs and expenses (including attorney fees) as determined by the Secretary to have been reasonably incurred by such person for or in connection with his participation in such proceedings, including any judicial review of agency actions, may be assessed against either party as the court, resulting from judicial review or the Secretary, resulting from administrative proceedings, deems proper.

30 U.S.C. § 1275(e).

In examining the circumstances surrounding its enactment,[4] the FedSMCRA embodies the congressional recognition of the need to establish "a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C. § 1202(a). To accomplish this objective, Congress envisioned enhanced citizen participation in the regulatory process. The congressional policy was expressed as follows:

The success or failure of a national coal surface mining program will depend, to a significant extent, on the role played by citizens in the regulatory process. The State regulatory authority or Department of Interior can employ only so many inspectors, only a limited number of inspections can be made on a regular basis and only a limited amount of information can be required in a permit or bond release application or elicited at a hearing.... While citizen participation is not, and cannot be, a substitute for governmental authority, citizen involvement in all phases of the regulatory scheme will help insure that the decisions and actions of the regulatory authority are

4. The legislature sometimes does not intend statutes to be given their literal effect. *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). In such cases, it is permissible to consider the circumstances surrounding the enactment of a particular statute in order to determine legislative intent. *Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).

grounded upon complete and full information. In addition, providing citizen access to administrative appellate procedures and the courts is a practical and legitimate method of assuring the regulatory authority's *compliance* with the requirements of the Act.

In many if not most cases in both the administrative and judicial forum, the citizen who sues to *enforce* the law, or participates in administrative proceedings to *enforce* the law, will have little or no money with which to hire a lawyer. If private citizens are to be able to assert the rights granted to them by this bill, ... then citizens must have the opportunity to recover the attorneys' fees necessary to vindicate their rights. Attorneys' fees may be awarded to the permittee or government when the suit or participation is brought in bad faith.

S.Rep. No. 95–128, 95th Cong., 1st Sess., at 59 (emphasis added).

Congress intended the provision for awards of costs and counsel fees to apply in the context of *enforcement*-type administrative proceedings brought by private parties against mine companies. The legislative expression of intent is replete with references to enforcement. Nowhere in this expression of legislative intent is there any indication that costs and attorney's fees would be awarded in proceedings that are unrelated to enforcement of the FedSMCRA.

Furthermore, the legislative history of the FedSMCRA indicates that the surface coal mining statute is to be construed, together with related statutes,[5] none of which provide for recovery of costs and fees in non-enforcement-type administrative proceedings. *See* H.R.Rep. No. 95–218, 95th Cong., 1st Sess. at 88–89, *reprinted in* 1977 U.S.Code Cong. & Admin.News, at 593. Similarly, in Pennsylvania,

---

**5.** "It is the committee's intention that this section be construed consistently with the history of similar federal statutes providing for awards of attorney's fees in citizen suit actions." 1977 U.S.Code Cong. & Admin.News, at 627. Similar federal statutes include the Water Pollution Control Act Amendments of 1972 and the Marine Protection, Research and Sanctuaries Act of 1972. *Utah International Inc. v. Department of the Interior*, 643 F.Supp. 810, 824 (D.Utah 1986).

Section 601(g) of The Clean Streams Law and Section 13(f) of The Bituminous Mine Subsidence Act, as well as Section 13(e) of The Coal Refuse Disposal Control Act, Act of September 24, 1968, P.L. 1040, No. 318, *as amended*, 52 P.S. § 30.63(e), all provide for citizen suits and payment of attorney's fees only in enforcement actions. Because these statutes and the SMCRA are "related" in the sense that they operate together to regulate surface coal mining in the Commonwealth, the logical conclusion is that the SMCRA, in carrying out the federal mandate, also allows for awards of costs and fees only in enforcement-type proceedings.

The conclusion that Congress intended awards of costs and attorney's fees to be provided only in enforcement-related administrative proceedings is supported by the federal regulations which implement Section 525(e). The federal regulations provide for five situations in which costs and attorney fees may be recovered. Subsection (a) of 43 C.F.R. § 4.1294 clearly states that awards would be made for enforcement. Subsection (b) is not relevant to this appeal. Subsection (c) expressly states that a permittee would be entitled to an award if "OSM issued an order of cessation, a notice of violation or an order to show cause why a permit should not be suspended or revoked...." Subsection (d) provides for awards to permittees from any person who brings a bad-faith action against the permittee, a situation which Big "B" has not alleged in the present appeal. Subsection (e) does not apply to this case. Thus, the federal implementing regulations, especially subsection (c), which is the only provision which has any relevance to this appeal, were promulgated in a manner suggestive of the intention that the regulations are to be applied only in the context of enforcement-related administrative proceedings.

Even though Section 4(b) of the SMCRA does not provide that attorney's fees only be awarded to private parties who bring enforcement actions, it is because of this legislative history that we should look to the congressional intent that was behind the passage. The plain language of the

SMCRA is not plain when, in effect, Congress applied different definitions to those terms—if it did not define white or black—it certainly defined it as gray, which is its prerogative. Our General Assembly intended to enact what Congress intended to be enacted and for the outcome to be identical.

This is especially appropriate in the context of shifting of attorney's fees because Congress has a history in enactment of legislation awarding counsel fees that it does not intend the words to be defined as their literal meaning would suggest. For example, 42 U.S.C. § 1988 provides:

> [I]n any action or proceeding to enforce a provision of [Section 1983 and other statutes] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Despite the statute drawing no distinction between different kinds of prevailing parties, ordinarily, prevailing defendants are generally not entitled to fees. *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Supreme Court held that a purpose behind the enactment of Section 1988 was to encourage parties to bring actions to vindicate civil rights and not to chill enforcement by awarding fees to prevailing defendants. A similar rationale applies to the FedSMCRA, as well as the SMCRA. It is with this background that both Congress and the General Assembly passed Section 30 U.S.C. § 1275(e) and Section 52 P.S. § 1396.4(b), and, while at odds with the plain language, it is clear that both intended that only private parties seeking to enforce the SMCRA would receive benefits.

Moreover, an application of the SMCRA, as the majority interprets the statute, would result in a situation where awards of costs and fees would be assessed against the government and made available to *any* person in connection with *every* surface coal mining-related administrative proceeding. Such an interpretation would be tantamount to a guaranteed recovery of costs and counsel fees to every

participant in any type of administrative proceeding. I do not believe Congress, nor the General Assembly, in following the federal mandate, intended such a result. The consequences of such an application would fly in the face of the expressly-stated legislative purpose of providing awards of costs and fees to citizens who bring or participate in enforcement actions, and would precipitate a myriad of practical problems in the administration of the surface mining regulation.

In light of the above, I believe that the majority incorrectly held that Section 4(b) of the SMCRA authorizes the recovery of cost and fee awards even in non-enforcement administrative proceedings. Because the SMCRA is intended as a mechanism to implement minimum federal standards for surface coal mining, the legislative history and intent of the FedSMCRA cannot be disregarded. Accordingly, I would deny Big "B's" request for counsel fees and costs under Section 4(b) of the SMCRA.