MARY FRANCES RINEHART, ADMINISTRATRIX OF THE ESTATE OF JENA CAROL RINEHART, PLAINTIFF v. HARTFORD CASUALTY INSURANCE COMPANY, DALE AMOS GULLEDGE, NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, DEFENDANTS

No. 8819SC69

(Filed 20 September 1988)

1. **Insurance § 79— N. C. Insurance Guaranty Association—no obligation to pay amount of insolvent insurer's policy limit**

Where plaintiff had already received from solvent automobile insurers an amount equal to an insolvent insurer's policy limits, the N. C. Insurance Guaranty Association had no obligation to pay on plaintiff's claim pursuant to N.C.G.S. § 58-155.48(a)(1) and N.C.G.S. § 58-155.52(a), and there was no distinction between primary and secondary coverage or between an operator's policy and an uninsured motorists provision.

Rinehart v. Hartford Casualty Ins. Co.

2. **Insurance § 69— settlement with tortfeasor without insurer's consent—no prejudice**

   Since defendant insurance company waived its rights to subrogation for the payment of uninsured and underinsured motorists claims, it suffered no prejudice by plaintiff's signing of a settlement with the tortfeasor without defendant's consent and it was therefore required to recognize plaintiff's claim for underinsurance coverage.

APPEAL by plaintiff and defendant from *DeRamus, Judson D., Jr., Judge.* Judgments entered 2 October 1987 and 12 October 1987 in Superior Court, ROWAN County. Heard in the Court of Appeals on 7 June 1988.

*Carlton, Rhodes and Carlton by Gary C. Rhodes for plaintiff appellant-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe by Gregory C. York for defendant appellant-appellee, Hartford Casualty Insurance Company.*

*Moore & Van Allen by Joseph W. Eason, George M. Teague and John G. McJunkin for defendant appellee, North Carolina Insurance Guaranty Association.*

COZORT, Judge.

Plaintiff filed a wrongful death claim after her daughter's death. She then filed this declaratory judgment action to determine the amount of coverage due under insurance policies applicable to the claim. The trial court entered an order of summary judgment in favor of defendant North Carolina Insurance Guaranty Association, and plaintiff appeals. The trial court entered an order of summary judgment in favor of plaintiff and against defendant Hartford Casualty Insurance Company, and defendant Hartford appeals. We affirm.

On 6 September 1985, Jena Carol Rinehart, plaintiff's daughter (hereinafter "Rinehart"), was a passenger in a 1978 Datsun owned by Dale Amos Gulledge and operated by John Michael Snyder. While driving on Klumac Road in Rowan County, North Carolina, Snyder lost control of the car and caused an accident which killed him and Rinehart.

At the time of the accident, Gulledge had a policy of liability insurance with Iowa National Mutual Insurance Company (Iowa

National) which provided $50,000.00 of liability coverage for bodily injuries to or the death of one person. On 10 October 1985, Iowa National was declared insolvent. Pursuant to N.C. Gen. Stat. § 58-155.41, the North Carolina Insurance Guaranty Association (NCIGA) succeeded to its interests.

The driver of the vehicle, Snyder, had an automobile liability insurance policy with Maryland Casualty Company (Maryland Casualty) which provided the minimum statutory coverage of $25,000.00 for bodily injury to or the death of one person. Maryland Casualty paid plaintiff the full policy limits, $25,000.00, in return for plaintiff's execution of a Covenant Not to Enforce Judgment against Snyder's estate.

Rinehart had uninsured motorists coverage under her own automobile policy issued by Aetna Life and Casualty Company (Aetna). Aetna paid plaintiff $25,000.00, the full amount of Rinehart's uninsured motorists coverage.

At the time of the accident, Rinehart resided with her parents and was covered under a family automobile liability insurance policy issued to her parents by Hartford Casualty Insurance Company (Hartford). This policy provided her parents and all members of their household with uninsured and underinsured motorists coverage up to $100,000.00 for bodily injuries to or the death of one person.

On 31 December 1985, plaintiff filed a wrongful death action on Rinehart's behalf and on 12 June 1986 served a copy of the complaint and summons on defendant Hartford. When Hartford failed to appear or defend, plaintiff filed the present declaratory judgment action to construe the language of all automobile liability insurance policies applicable to the wrongful death action and to determine if Hartford's policy provided underinsured motorists coverage.

Once the declaratory judgment action was filed, defendant NCIGA filed a motion for partial summary judgment on the ground that it had no obligation to plaintiff according to the Insurance Guaranty Association Act. Plaintiff filed a motion for summary judgment against Hartford on the ground that Hartford's policy provided coverage on the subject claim. From the order granting NCIGA's motion for partial summary judgment,

plaintiff appeals. From the order granting summary judgment in plaintiff's favor against Hartford, defendant Hartford appeals.

[1]  Plaintiff's sole argument on her appeal is that the trial court erred in granting partial summary judgment in favor of defendant NCIGA. We disagree.

"A motion for summary judgment may be granted only when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." *Ballenger v. Crowell*, 38 N.C. App. 50, 53, 247 S.E. 2d 287, 290 (1978).

Section 58-155.42 provides that the purpose of the Insurance Guaranty Association Act is

> to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, and to avoid financial loss to claimants or policy-holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

N.C. Gen. Stat. § 58-155.42 (1982). Insurers licensed to transact business in North Carolina "shall be and remain members of the Association as a condition of their authority to transact insurance in this State." N.C. Gen. Stat. § 58-155.46 (Supp. 1987). When a member insurer becomes insolvent, the Association is "obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within 30 days after the determination of insolvency . . . . In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises." N.C. Gen. Stat. § 58-155.48(a)(1) (Supp. 1987). Recovery from the Association, however, is limited by the following statutory provision:

> (a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this Article shall be reduced by the amount of any recovery under such insurance policy.

N.C. Gen. Stat. § 58-155.52(a) (1982).

In this case, Iowa's policy provided coverage up to $50,000.00 for bodily injuries to or the death of one person. Before proceeding with her claim against Iowa, plaintiff exhausted her claims against solvent insurers as required by § 58-155.52(a). Plaintiff recovered $25,000.00 from Maryland Casualty under the operator's policy of insurance and another $25,000.00 from Aetna under its uninsured motorists provision. Since plaintiff has already received from solvent insurers an amount equal to the insolvent insurer's policy limits, we find that NCIGA has no obligation to pay on plaintiff's claim. Plaintiff contends that the $25,000.00 paid by Aetna was secondary coverage because it was paid under an uninsured motorists provision and is therefore exempt from the limitations of § 58-155.52(a). We disagree.

Section 58-155.52 provides that any liability under this Act is reduced by the amount of "any recovery" under *any* policy of a solvent insurer. N.C. Gen. Stat. § 58-155.52 (Supp. 1987). The statute does not distinguish between primary and secondary coverage or between an operator's policy and an uninsured motorists provision. Since plaintiff has already recovered $50,000.00, an amount equal to Iowa's policy limits, she no longer has a claim against NCIGA. We hold that the trial court properly granted summary judgment in favor of NCIGA.

[2] Defendant Hartford argues in its appeal that the trial court erred in granting plaintiff's motion for summary judgment. We disagree.

Section 20-279.21(b)(4) provides in part:

The insurer shall not be obligated to make any payment because of bodily injury to which underinsured motorist insurance coverage applies and that arises out of the ownership, maintenance, or use of an underinsured highway vehicle until *after* the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, and provided the limit of payment is only the difference between the limits of the liability insurance that is applicable and the limits of the underinsured motorist coverage as specified in the owner's policy. [Emphasis added.]

N.C. Gen. Stat. § 20-279.21(b)(4) (1987). Pursuant to this statute, plaintiff exhausted all other available coverage before filing an underinsured motorists claim with defendant Hartford. Defendant Hartford argues that its policy no longer provides coverage because of the following provision:

PART C—UNINSURED MOTORISTS COVERAGE

. . . .

Exclusions

A. We do not provide Uninsured Motorists Coverage for property damage or bodily injury sustained by any person:

   1. If that person or the legal representative settles the bodily injury or property damage claim without our written consent.

Defendant Hartford contends that the Covenant Not To Enforce Judgment signed by plaintiff constituted a settlement to which it did not consent and which now relieves Hartford of its duty to provide coverage. We do not agree.

The purpose of the no-consent-to-settlement provision is to give defendant Hartford notice of any payments by the tortfeasor so that it may protect its subrogation rights. Defendant Hartford has waived its subrogation rights for underinsured motorists payments under Part F of the subject policy which provides:

Our Right to Recover Payment

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

   However, our rights in this paragraph do not apply under:

 1. Parts B and C; [Uninsured Motorists Coverage].

Since defendant Hartford has waived its rights to subrogation for the payment of uninsured and underinsured motorists claims, it has suffered no prejudice by plaintiff's noncompliance with the notice provisions of the policy. When notice requirements are involved in a policy of insurance, "the question becomes whether the insurer has been prejudiced by the delay in receiving notice." *Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 303 N.C. 387, 394, 279 S.E. 2d 769, 773 (1981).

> This equitable approach to the interpretation of notice requirements in insurance contracts has the advantages of providing coverage whenever in the reasonable expectations of the parties it should exist and of protecting the insurer whenever failure strictly to comply with a condition has resulted in material prejudice.

*Id.* at 396, 179 S.E. 2d at 775. Since defendant Hartford suffered no prejudice because of plaintiff's failure to comply fully with the policy provisions, it must recognize plaintiff's claim.

We addressed this same issue in *Branch v. Travelers Indemnity Co.*, 90 N.C. App. 116, 367 S.E. 2d 369 (1988). In that case, plaintiff's intestate was killed in an automobile accident. Plaintiff recovered $50,000.00 from the negligent operator's policy in exchange for a Covenant Not to Sue the tortfeasor's estate. When plaintiff filed a claim under an underinsured motorists policy, defendant insurance company denied coverage on the ground that the Covenant Not to Sue violated the policy's no-consent-to-settlement provision. Defendant also argued that the covenant nullified its subrogation rights against the tortfeasor, even though its policy renounced subrogation rights against underinsured motorists. This Court stated that, although plaintiff failed to comply with the consent-to-settlement provision, defendant "was not prejudiced by this noncompliance in view of its renunciation of all subrogation right in an underinsurance context," *id.* at 119, 367 S.E. 2d at 371, and that defendant was not relieved of its obligation to pay underinsurance coverage. Accordingly, we find that defendant Hartford is obligated to honor plaintiff's claim and that the trial court properly granted summary judgment in plaintiff's favor.

Affirmed.

Judges JOHNSON and PARKER concur.