**Rene M. STECHER, Appellant,**

v.

**IOWA INSURANCE GUARANTY ASSOCIATION, Appellee.**

**No. 90–64.**

Supreme Court of Iowa.

Feb. 20, 1991.

Stephen J. Juergens and Norman J. Wangberg of Fuerste, Carew, Coyle, Juergens & Sudmeier, P.C., Dubuque, for appellant.

William L. Dawe, Steven M. Augspurger, and Thomas R. Bernau of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal from a declaratory judgment action involving a plaintiff who was injured by a tortfeasor whose automobile insurer became insolvent. The question is whether the district court correctly interpreted Iowa Code section 515B.9(1) (1989) to credit the Iowa Insurance Guaranty Association with the amount of uninsured motorist benefits received by the plaintiff. Finding no error, we affirm.

The facts are undisputed. In September 1985 plaintiff Rene Stecher was the passenger on a motorcycle that went out of control and collided with a highway guardrail. The motorcycle was driven by Michael Donovan with the consent of the owner, Brian Donovan. Stecher sustained serious injuries deemed for purposes of this appeal to exceed $75,000.

At the time of the accident Stecher carried a policy of insurance with State Farm which provided uninsured motorist and underinsured motorist coverages of $25,000 each. Donovans were insured for $50,000 personal injury liability under a policy issued by American Interinsurance Exchange (AIE). AIE became insolvent and was placed in liquidation after the accident. As a result of AIE's insolvency, State Farm paid Stecher $25,000, the full limits of her uninsured motorist benefits.[1]

Stecher then filed a claim with the Iowa Insurance Guaranty Association (IGA). IGA is empowered by statute to assume certain obligations of insolvent insurers. *See* Iowa Code § 515B.5. Stecher asserted a right to recover from IGA the $50,000 liability limits she would have received under Donovans' AIE policy but for its insolvency. IGA responded that under the "nonduplication of recovery" provisions of

Iowa Code section 515B.9(1),[2] it was entitled to an offset of $25,000 for the uninsured motorist benefits previously paid by State Farm. Stecher resisted the offset on the ground that no duplication of recovery existed. She claimed the offset amounted to a windfall for IGA which deprived her of the benefit of premiums paid for uninsured and underinsured coverage.

The controversy moved to district court on Stecher's petition for declaratory judgment. The court ruled that although IGA stands in the shoes of the insolvent insurer, section 515B.9(1) entitles it to credit for payments made by the injured party's own insurer. In this way, the court held, "the risk of insolvency is spread while the injured party receives compensation she would not have otherwise received." It is from this ruling that Stecher appeals.

Stecher challenges the court's ruling on principles of equity and statutory interpretation. Her equitable arguments are not entirely without merit. If the aim of section 515B.9(1) is to avoid duplicate recovery of insurance benefits, Stecher is a poor target. Had AIE remained solvent, she could have recovered $50,000 under Donovans' liability policy, and then looked to her own insurer for $25,000 underinsured benefits. Her potential recovery would have totaled $75,000. Because of AIE's insolvency, however, Donovans are deemed uninsured. Thus Stecher loses the benefit of her underinsurance coverage and, under IGA's proposed interpretation of section 515B.9(1), her recovery is further reduced by a dollar-for-dollar offset against any uninsured motorist coverage she carries. The fact remains that even without this offset, no duplication of recovery exists

---

1. Iowa Code § 516A.3 provides, in part, that coverage for an uninsured motor vehicle shall include coverage for "an insured motor vehicle with respect to which insolvency proceedings have been instituted against the liability insurer thereof...."

2. The statute states, in pertinent part:

Any person having a claim under another policy, which claim arises out of the same facts which give rise to a covered claim, shall

be first required to exhaust the person's right under the policy. Any amount recovered or recoverable by a person under another insurance policy shall be credited against the liability of the association.... For purposes of this section, another insurance policy means a policy issued by any insurance company ... which policy insures against any of the types of risks set forth in section 515.48, except those types of risks set forth in section 515.48, subsection 5, paragraph "a"....

Iowa Code § 515B.9(1).

because Stecher's damages exceed the total of all coverages available.

The question is whether the purpose of IGA is to make claimants whole or, as the district court held, to spread the risk of insolvency among policyholders, claimants and the fund itself. To find the answer, we must look beyond the title "Nonduplication of Recovery" given section 515B.9(1). *See Searls v. Iowa Dep't of Transp.*, 405 N.W.2d 808, 810 (Iowa 1987) (title of statute cannot limit plain meaning of text). It is true that in other contexts, we have held that where underinsured benefits are available, no duplication of recovery exists until the injured insured is fully compensated. *See, e.g., McClure v. Northland Ins. Co.*, 424 N.W.2d 448, 450 (Iowa 1988); *American States Ins. Co. v. Estate of Tollari*, 362 N.W.2d 519, 522 (Iowa 1985). Those cases differ significantly from the present one, however. Stecher makes no claim that her own insurer is depriving her of benefits "bought and paid for." *Tollari*, 362 N.W.2d at 522. Her quarrel is with the restrictions imposed by the very legislative scheme that gives injured plaintiffs like herself a means of satisfying claims against insolvent insurers. The contractual analysis underlying *Tollari* and its progeny simply sheds no light on the present controversy.

We turn, then, to Stecher's statutory interpretation argument. The dispute centers on the definition of "another policy" found in Iowa Code section 515B.9(1). Stecher correctly notes that neither uninsured nor underinsured motorist coverages are listed among the many types of insurance risks catalogued in section 515.48. By this omission, she argues, the legislature must have intended to exempt these risks from the reach of section 515B.9(1)'s definition of "another policy." In the alternative, she asserts that if uninsured coverage is embraced by section 515.48 at all, it falls within the first-party health and accident risks of section 515.48(5)(*a*) that are specifically exempted from the status of "another policy" under section 515B.9(1).

■ Stecher's argument ignores the reference in section 515.48(5)(*e*) to insurance "against liability for loss ... arising or resulting from accidents occurring by reason of the ownership, maintenance, or use of automobiles...." It is true that uninsured and underinsured coverages are not strictly "liability" risks. Nevertheless, they are required by statute to be included in every policy of automobile *liability* insurance issued in this state, unless rejected in writing by the insured. Iowa Code § 516A.1; *see also Rohret v. State Farm Mut. Auto. Ins. Co.*, 276 N.W.2d 418, 419 (Iowa 1979) (uninsured motorist statute is "read into" automobile liability policies). Moreover, section 515.48(5)(*e*) is not limited to liability policies. It also includes first-party risks, such as collision and comprehensive property damage, arising from motor vehicle use. Iowa Code § 515.48(5)(*e*). For these reasons, we think it reasonable to assume that the legislature intended uninsured and underinsured coverages to be embraced within section 515.48(5)(*e*)'s broad category of risks.

■ Our interpretation of section 515B.9(1) comports with decisions in the majority of states which have interpreted similar statutes to hold that accident victims must exhaust their uninsured motorist coverages before filing a claim with the state's insurance guaranty association. Upon payment of the claim, the association is entitled to a credit for the uninsured motorist coverage already collected by the victim. *See, e.g., King v. Jordan*, 601 P.2d 273, 278 (Alaska 1979); *Lucas v. Illinois Ins. Guar. Fund*, 52 Ill.App.3d 237, 239, 10 Ill.Dec. 81, 83, 367 N.E.2d 469, 471 (1977); *Vokey v. Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 391, 409 N.E.2d 783, 786 (1980); *Rinehart v. Hartford Cas. Ins. Co.*, 91 N.C.App. 368, 372, 371 S.E.2d 788, 791 (1988); *Bullock v. Pariser*, 311 Pa.Super. 487, 494, 457 A.2d 1287, 1290–91 (1983); *Prutzman v. Armstrong*, 90 Wash.2d 118, 122, 579 P.2d 359, 362 (1978).

Stecher cites two contrary decisions in Louisiana which have held that allowing an offset would thwart the guaranty association's purpose of preventing financial loss to claimants and policyholders alike. *See*

*Billeaudeau v. Lemoine,* 386 So.2d 1359, 1361 (La.1980); *Hickerson v. Protective Nat'l Ins. Co. of Omaha,* 383 So.2d 377, 379 (La.1980). We note, however, that the Louisiana legislature recently overruled these decisions by statute. *See* 1990 La. Acts 130. The state amended its nonduplication of recovery clause to specifically require a credit for payments received for uninsured and underinsured motorist coverages. *Id.*

■ In summary, a reasonable interpretation of section 515B.9(1) leads us to conclude that the legislature intended uninsured motorist coverage to be included within the definition of "another insurance policy" which must be credited against the liability of the IGA. We recognize that such an interpretation may result in unfairness to plaintiffs like Stecher who purchased additional coverage in the hope of increasing, not reducing, their potential recovery. *See generally* Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause,* 74 Iowa L.Rev. 927, 946–48 (1989) (proposing that IGA should not be able to deduct uninsured benefits if the insured also maintains underinsured coverage). Disputes with the policy underlying section 515B.9(1), however, should be directed toward the legislature, not this court. We find no error in the district court's interpretation of the statute and, accordingly, we affirm it.

AFFIRMED.