# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-02238-SCT

*MISSISSIPPI INSURANCE GUARANTY
ASSOCIATION*

*v.*

*KYNDALL COLE, A MINOR, BY AND THROUGH
WENDY DILLON AS NEXT FRIEND AND
NATURAL MOTHER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2005 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CLIFFORD C. WHITNEY, III |
| ATTORNEY FOR APPELLEE: | T. MACK BRABHAM |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/01/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2005-IA-02246-SCT

*SOUTHWEST MISSISSIPPI REGIONAL
MEDICAL CENTER*

*v.*

*KYNDALL COLE, A MINOR BY AND THROUGH
WENDY DILLON AS NEXT FRIEND AND
NATURAL MOTHER*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/2005 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |

ATTORNEYS FOR APPELLANT:     R. MARK HODGES
                             GRETCHEN W. KIMBLE
ATTORNEY FOR APPELLEE:        T. MACK BRABHAM
NATURE OF THE CASE:          CIVIL - INSURANCE
DISPOSITION:                 AFFIRMED AND REMANDED - 03/01/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., DIAZ AND EASLEY, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     These two consolidated interlocutory appeals were filed by the Mississippi Insurance Guaranty Association (MIGA) and Southwest Mississippi Regional Medical Center (SMRMC).  Finding no error, this Court affirms the trial court's denial of MIGA's and SMRMC's motion for summary judgment.

## PROCEDURAL HISTORY

¶2.     On December 31, 2002, Wendy Dillon (Dillon) filed suit in the Circuit Court of Pike County, Mississippi, individually and on behalf of her minor child Kyndall Cole, for negligent care and treatment given to Dillon in the course of her pregnancy, which she alleged resulted in injuries to Cole .[1]  Dillon filed suit against Dr. Dawn Sumrall (Sumrall), McComb OB-GYN Associates (McComb OB-GYN), and SMRMC.

¶3.     At the time Dillon filed suit, all three defendants had solvent insurance companies. Thereafter, SMRMC's insurer, Reciprocal of America (ROA), became insolvent.  MIGA assumed the defense of SMRMC pursuant to Miss. Code Ann. § 83-23-115 (Rev. 1999), the

---

[1]  The two plaintiffs in this case, Dillon and her child, Kyndall Cole, will be referred to as "Dillon" only, unless the discussion requires specific reference to Kyndall.

2

Mississippi Insurance Guaranty Act Association Law (the Guaranty Act). The Legislature enacted the Guaranty Act to provide payment of covered claims and avoid financial losses to claimants and insurance policyholders in the event an insurer becomes insolvent. Miss. Code Ann. § 83-23-103(Rev. 1999).

¶4.    Dillon settled her claim against Sumrall and McComb OB-GYN for an amount in excess of $300,000, but less than the maximum insurance policy limits. As part of the settlement terms, Sumrall and McComb admitted no liability. Sumrall and McComb OB-GYN were dismissed from the lawsuit.[2]

¶5.    Dillon filed a second amended complaint, which added MIGA as a defendant, and sought declaratory judgment against MIGA regarding coverage. MIGA and SMRMC filed separate motions for summary judgment. MIGA's summary judgment motion sought relief from any obligation to pay Dillon. MIGA's interpretation of the Guaranty Act was that a joint tortfeasor's solvent insurance coverage had to be exhausted before MIGA had any responsibility to pay. MIGA also had a $300,000 statutory maximum obligation per claim. Sumrall and McComb OB-GYN had already settled with Dillon for an amount in excess of $300,000. Under MIGA's interpretation of the Guaranty Act, the plain language of its exhaustion provision (Miss. Code Ann § 88-23-123 (Rev. 1999)) required that Dillon's recovery of more than $300,000 from a solvent insurance policy be credited against any MIGA obligation. Because Dillon had received more than MIGA's $300,000 statutory maximum payment, MIGA argued it could credit that payment against its obligation.

---

[2] Defendants Sumrall and McComb OB-GYN will be referred to as "Sumrall."

¶6. SMRMC's summary judgment motion sought dismissal of the action based on immunity. SMRMC asserted immunity for any recovery by Dillon in excess of $250,000 pursuant to the Mississippi Torts Claim Act (the MTCA). Miss. Code Ann. § 11-46-15 (Rev. 2002). Since SMRMC's insurer, ROA, had become insolvent, SMRMC also asserted that it was protected by the Guaranty Act. SMRMC maintained that it was not liable to Dillon for the same reason that MIGA claimed it was not liable to Dillon.

¶7. The trial court denied MIGA's and SMRMC's motions for summary judgment. Thereafter, MIGA and SMRMC separately petitioned this Court for interlocutory appeal. *See* M.R.A.P. 5. This Court granted both interlocutory appeals and stayed the trial court proceedings on January 12, 2006. This Court then consolidated the two interlocutory appeals. MIGA and SMRMC raise the following issues on appeal:

> **I. Whether the exhaustion provision of Miss. Code Ann. § 83-23-123 of the Mississippi Insurance Guaranty Association Law requires a claimant to exhaust a solvent insurance policy covering joint tortfeasors, and whether MIGA is entitled to a credit against its statutory obligation in the amount of the solvent insurance.**

> **II. Whether SMRMC, a community hospital, is entitled to immunity under the Mississippi Tort Claims Act .**

## DISCUSSION

¶8. In ***Gorman-Rupp Co. v. Hall***, 908 So. 2d 749, 753-54 (Miss. 2005), this Court set forth the standard of review in summary judgment issues as follows:

> This Court applies a de novo standard of review on appeal from a denial of summary judgment by the trial court. ***Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.***, 708 So. 2d 1351, 1354 (Miss. 1998). *See also* ***Jenkins v. Ohio Cas. Ins. Co.***, 794 So. 2d 228, 232 (Miss. 2001); ***Russell v. Orr***, 700 So. 2d 619, 622 (Miss. 1997); ***Richmond v. Benchmark Constr. Corp.***, 692 So. 2d 60, 61

4

(Miss. 1997); **Northern Elec. Co. v. Phillips**, 660 So. 2d 1278, 1281 (Miss. 1995).

**Gorman-Rupp**, 908 So. 2d at 753-54.

### I.     Miss. Code § 83-23-123

#### A.     The trial court order denying summary judgment

¶9.     The trial court denied the separate summary judgment motions of MIGA and SMRMC.[3] The trial court considered whether Dillon's claim against Sumrall was a "covered claim" and whether the exhaustion provision of Miss. Code Ann. § 83-23-123 was applicable.  The trial court order stated, in part:

> The court finds that the claim settled with Sumrall and McComb/OB-Gyn is not a "covered claim["] within the meaning of the Guaranty Act as it was written.  The Act does not eliminate the Plaintiff's claim against SMRMC because a joint tortfeasor settled.  Instead[,] it caps the potential recovery from MIGA if any on the claim against SMRMC.
> The court finds that MIGA and SMRMC are not entitled to offset amounts paid by or for the co-defendants in this case.  Indeed[,] a holding to the contrary would shift all of the "loss" to the settling co-defendant and plaintiff.  Logic and simple economics dictate that the "loss" caused by insolvency cannot be eliminated, only redistributed.  It appears that the purpose of the Guaranty Act is to cap the liability of the fund and distribute liabilities incurred among the contributing members. **The act does not exist to shift the burden entirely to the solvent insurers of co-defendants.** The Motions for Summary Judgments (granting the offset) are denied.

(Emphasis added).

#### B.     The Guaranty Act

---

[3]  The trial court acknowledged in the "FACTS" section of its order that SMRMC enjoyed limited immunity pursuant to the MTCA.  Therefore, the MTCA capped SMRMC's liability, if any, at $250,000.

¶10.    To determine if the exhaustion provision of the Guaranty Act is applicable, this Court must review the purpose and definition sections of the Guaranty Act in conjunction with the exhaustion provision. Miss. Code Ann. § 83-23-103 provides:

> The purpose of this article is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

¶11.    Therefore, the Guaranty Act is, in part, a mechanism to provide payment of "covered claims" and to avoid delays in payments and financial loss to a claimant or policyholder in the event an insurer becomes insolvent. This Court has held that the Guaranty Act statutes are to be construed liberally. *Miss. Ins. Guar. Ass'n v. Byars*, 614 So. 2d 959, 963 (Miss. 1993). "[The] guidelines for the proper construction of this law can be found in Miss. Code Ann. § 83-23-107 (1972). 'This article shall be liberally construed to effect the purpose under section 83-23-103, which shall constitute an aid and guide to interpretation.'" *Miss. Ins. Guar. Ass'n v. Harkins & Co.*, 652 So. 2d 732, 735 (Miss. 1995). In *Byars*, 614 So. 2d at 963, this Court further held:

> The Mississippi Insurance Guaranty Association Law was enacted to protect policy holders of certain kinds of insurance in the event of their insurer's insolvency. MIGA is a statutorily-created unincorporated association consisting of insurance companies doing business in Mississippi. Each solvent insurer doing business in this state is assessed a pro rata share of amounts paid on behalf of insolvent insurers. *Bobby Kitchens v. Mississippi Insurance Guaranty Association*, 560 So. 2d 129, 131 (Miss. 1989); *Mississippi Insurance Guaranty Association v. Gandy*, 289 So. 2d 677, 681 (Miss. 1973). MIGA is prohibited by statute from paying anything other than a covered claim, and the statute further requires that all other sources of insurance must be exhausted before looking to MIGA for any coverage. *Id*. at 131.

6

¶12.   While ***Byars*** cites to ***Kitchens***, 560 So. 2d at 131, for the proposition that "MIGA is

prohibited by statute from paying anything other than a covered claim, and the statute further

requires that all other sources of insurance must be exhausted before looking to MIGA for

any coverage[,]" this Court never reached the issue of the exhaustion provision.  *See also*

Miss. Code Ann. §  83-23-123.

¶13.   This Court must examine what constitutes a "covered claim" as defined by the

Guaranty Act.  Miss. Code Ann. § 83-23-109(f) defines a "covered claim" as follows:

> **"Covered claim"** means **an unpaid claim**, including one of unearned
> premiums, which arises out of and is within the coverage and not in excess of
> the applicable limits of an insurance policy to which this article applies issued
> by an insurer, *if* such **insurer** **becomes an** **insolvent** **insurer** <u>and</u> **(1)** the
> claimant or insured is a resident of this state at the time of the insured event,
> provided that for entities other than an individual, the residence of a claimant
> or insured is the state in which its principal place of business is located at the
> time of the insured event; **or (2)** the property from which the claim arises is
> permanently located in this state. "Covered claim" shall not include any
> amount awarded as punitive or exemplary damages; or sought as a return of
> premium under any retrospective rating plan; or due any reinsurer, insurer,
> insurance pool, or underwriting association, as subrogation recoveries or
> otherwise and shall preclude recovery thereof from the insured of any
> insolvent carrier to the extent of the policy limits.

(Emphasis added).

¶14.   Miss. Code Ann. § 83-23-123(1) concerns the provision of the Guaranty Act that has

been described as either the "non-duplicative" or "exhaustion provision."  Miss. Code Ann.

§ 83-23-123(1) provides:

> Any person having a claim against an insurer under any provision in an
> insurance policy other than a policy of an insolvent insurer, **which is also a**
> **covered claim**, shall be required to exhaust first his right under such policy.
> Any amount payable on a **covered claim** under this article shall be reduced by
> the amount of any recovery under such insurance policy.

7

(Emphasis added).

### C.   The exhaustion provision of Miss. Code Ann. § 83-23-123

¶15.   MIGA asserts that the trial court erred by denying its motion for summary judgement. Pursuant to the exhaustion provision of Miss. Code Ann. § 83-23-123, MIGA argues that ***any*** solvent insurance policy covering a claimed injury must be exhausted prior to seeking payment by MIGA.  In addition, MIGA insists that any insurance proceeds provided to a claimant from a *solvent* insurance company should be credited against MIGA's $300,000 statutory limit of liability on any claim.  Therefore, on appeal, MIGA asserts that the trial court erred by denying its motion for summary judgment because Sumrall settled and paid Dillon in excess of $300,000.

¶16.   Dillon argues that her claim against Sumrall is not a "covered claim" as defined by the Guaranty Act because Sumrall's insurer was *solvent*.  *See* Miss. Code Ann. § 83-23-109(f).  According to Dillon, the plain meaning of the statute is that an offset to a recovery is permitted only on a "covered claim."  Therefore, Dillon maintains that this Court need not reach the issue of the exhaustion provision of Miss. Code Ann. §   83-23-123, because Sumrall's claim was not a "covered claim" and, consequently, the exhaustion provision is inapplicable.

¶17.   The Mississippi State Medical Association (MSMA) filed an amicus brief with this Court in this case.  MSMA's brief expresses its concern about the implications of a ruling that would support MIGA's position that the exhaustion provision requires a claimant first to exhaust the insurance proceeds from a solvent insurer prior to seeking any relief from MIGA.

¶18.    MSMA argues that applying MIGA's interpretation of the exhaustion provision of Miss. Code Ann. § 83-23-123 would result in a loss to both Dillon and Sumrall.  MSMA contends that the result of applying MIGA's interpretation would be that many physicians would be forced to pay more than their share despite the fault attributable to MIGA defendants.  MSMA submits that many physicians have been and will be placed in the same situation as Sumrall on these issues.  If this Court rules in MIGA's favor, MSMA maintains that physicians will be placed in an untenable situation because the plaintiffs will have to exhaust the full coverage limits of physicians' solvent insurers prior to seeking any recovery from MIGA, regardless of the level of fault of the insolvent insurer.

¶19.    Under MIGA's theory, it would be allowed a dollar-for-dollar credit for any recovery amount paid by the solvent insurer.  Thus, a physician would be forced to: (1) continue the lawsuit rather than settle; (2) incur ligation costs; (3) risk a trial and jury verdict; (4) pay the cost associated with insolvent insurers twice as an assessment by MIGA of a percentage of written policies and under the exhaustion theory; and (5) risk reporting to the National Physicians Database for a potential amount greater than the amount for which the physician and his or her solvent insurance company could have settled the case.  Finally, MSMA asserts that the Legislature's efforts for tort reform will be subverted if this Court accepts MIGA's argument.

¶20.    "It is our duty to interpret the statutes enacted by the Legislature, and to neither broaden nor restrict the legislative act." *Miss. Dep't of Transp. v. Allred*, 928 So. 2d 152, 156 (Miss. 2006).  In *Green v. Cleary Water, Sewer & Fire Dist.*, 910 So. 2d 1022, 1027 (Miss. 2005), this Court held that "courts cannot restrict or enlarge the meaning of an

9

unambiguous statute." *Green*, 910 So. 2d at 1027 (quoting *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994)). In *Allred*, 928 So. 2d at 154, this Court held:

> In considering a statute passed by the Legislature, . . . the first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. [Citations omitted]. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.

*Allred*, 928 So. 2d at 154 (quoting *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992)). Therefore, when a statute is not ambiguous, this Court applies the statute according to its plain meaning and need not apply principles of statutory construction. *Id.*

¶21.    Miss. Code Ann. § 83-23-109(f) is not ambiguous. In its unambiguous and simplest terms, a "covered claim" is an unpaid claim, with a few restrictions, that is "issued by an insurer, *if* such **insurer becomes an insolvent insurer** and" meets condition (1) or (2) of the definition. The clear and unambiguous key to the definition is that a "covered claim," under the Guaranty Act, relates to circumstances involving a once-solvent insurer that becomes *insolvent*.

¶22.    In addition, we find that Miss. Code Ann. § 83-23-123(1) is not ambiguous. This Court applies "the statute according to its plain meaning and should not use principles of statutory construction." *Allred*, 928 So. 2d at 154. The clear and unambiguous reading of the exhaustion provision states that a person who has a *covered claim* against an insurer under any insurance policy provision must exhaust his other rights under the policy. In addition, any amount paid by MIGA on that *covered claim* has to be reduced by the amount of recovery from the insurance policy. MIGA and Dillon both cite to interpretations of this

10

statute or similarly worded statutes from other jurisdictions, however, Miss. Code Ann. § 83-23-123 is clear and unambiguous on its face and requires no other interpretations.

¶23. In 2005, there was a proposed a legislative amendment to Miss. Code Ann. § 83-23-123(1). Dillon contends that this language now undermines MIGA's position on appeal. Contrary to MIGA's argument on appeal, the Legislature specifically rejected this interpretation of the statutory language of Miss. Code Ann. § 83-23-123(1). The proposed language to the 2005 Legislature for Miss. Code Ann. 83-23-123(1) provided:

> Any person having a claim against an insurer under any provision in an insurance policy other than the policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy regardless of the nature of the insurance coverage and regardless of whether the coverage is written as first party or third party coverage, including, but not limited to, coverages available to co-defendants or joint tortfeasors in any claim or action. . .

S.B. 2353, 2005 Leg., 120th Sess. (Miss. 2005). The Legislature did not adopt this proposed amendment language. Dillon asserts that the language of the statute in its present form, as opposed to the proposed amendment language above, demonstrates that a plain reading of the current language of the statute does not require exhaustion of the insurance coverage by co-defendants or joint tortfeasors.

¶24. Applying the statutes to the facts, Dillon's claim against Sumrall and McComb OB-GYN clearly is not a covered claim as defined by Miss. Code Ann § 83-23-109(f). The statute states that a "covered claim" arises from an insurance policy issued from a later *insolvent* insurance carrier. Sumrall and McComb OB-GYN's insurance carrier remained *solvent* at all times, therefore, these defendants never had an insolvent insurer and thus failed to satisfy meet the definition of "covered claim."

11

¶25. In contrast, Dillon's claim against SMRMC is a "covered claim." Dillon sued SMRMC for actions of its employees. SMRMC's insurance carrier, ROA, became insolvent. Therefore, Dillon had an unpaid claim, "which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, *if* such <u>insurer</u> becomes an <u>insolvent</u> insurer and," thus meeting condition (1) of the statute.

¶26. Logically, Sumrall and McComb OB-GYN's failure to satisfy the definition of "covered claim" ensures their failure to meet the unambiguous terms of the non-duplicative or exhaustion provision of Miss. Code Ann. § 83-23-123 as well. Dillon's claim against Sumrall and McComb OB-GYN is not a "covered claim," therefore, she is not required to first exhaust her rights under such policy. Further, any recovery under such insurance policy is not reduced since the claim is not a "covered claim." Therefore, MIGA cannot offset any of Dillon's recovery from Sumrall and McComb OB-GYN's insurance payments, since these recovery amounts are not part of a "covered claim" pursuant to the Guaranty Act. Accordingly, we find that the trial court did not err by denying MIGA's and SMRMC's motions for summary judgment.

**II. Whether SMRMC, a community hospital, is entitled to immunity**

¶27. SMRMC also petitioned this Court for interlocutory appeal to determine whether it was entitled to immunity. In its brief, SMRMC claimed that it purchased insurance up to the amount of the Mississippi Tort Claim Act statutory waiver. This cause of action arose in

2000. At the time, the MTCA imposed a maximum recovery amount of $250,000.[4] The trial court acknowledged in the "FACTS" section of its order that "SMRMC enjoys limited immunity under the Mississippi Torts Claims Act. Accordingly the liability, if any, of SMRMC for the negligence complained of is capped at $250,000."

¶28. In Issue I, this Court affirmed the trial court ruling which denied MIGA's and SMRMC's motions for summary judgment. The trial court found that Dillon's claim against Sumrall and McComb OB-GYN was not a "covered claim" and there was no entitlement to offset amounts paid by or for the co-defendants in this case. Therefore, any liability award against MIGA and SMRMC has yet to be determined in the trial court.

## CONCLUSION

¶29. For the above reasons, this Court affirms the Circuit Court of Pike County's denial of summary judgment to MIGA and SMRMC and remands this case to the Circuit Court of Pike County, proceedings consistent with this opinion.

¶30. **AFFIRMED AND REMANDED.**.

---

[4] Miss. Code Ann.§ 11-46-15(1)(b)(1) (1999) states:

In any claim or suit for damages against a governmental entity or its employee brought under the provisions of this chapter, the liability shall not exceed the following for all claims arising out of a single occurrence for all damages permitted under this chapter:

(b) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1997, but before July 1, 2001, the sum of Two Hundred Fifty Thousand Dollars ($ 250,000.00)

13

SMITH, C.J., WALLER, P.J., DIAZ, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., AND GRAVES, J., NOT PARTICIPATING.