# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01263-SCT

*WILLIAM J. LEITCH, JR.*

*v.*

*MISSISSIPPI INSURANCE GUARANTY ASSOCIATION*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2007 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SARA B. RUSSO |
| ATTORNEY FOR APPELLEE: | CLIFFORD C. WHITNEY, III |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 02/08/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1.     We are today presented the following issue of first impression: Whether under Mississippi law, the amount payable by the Mississippi Insurance Guaranty Association ("MIGA") must be reduced by amounts recovered under a claimant's uninsured motorist coverage.  The trial court held in the affirmative.  We agree.

### BACKGROUND AND PROCEEDINGS

¶2.     William Leitch was involved in a traffic accident with a truck owned by H-G&F Co., Inc., and driven by Jack L. Dillard, an employee of H-G& F.  At the time of the accident, the truck was insured by Reliance Insurance Company, which has since been declared an

insolvent insurer within the meaning of Section 83-23-109 of the Mississippi Code. *See* Miss. Code Ann. § 83-23-109 (Rev. 1999).

¶3.     Leitch initially filed suit against Dillard and H-G&F, and later added his uninsured motorist ("UM") carrier, State Farm Mutual Automobile Insurance Company. Leitch sought his UM policy's limit of $300,000 from State Farm. Leitch and State Farm reached a settlement agreement for the amount of $300,000, and Leitch continued to maintain his claims against H-G&F and Dillard.

¶4.     Leitch filed a declaratory judgment action against the Mississippi Insurance Guaranty Association ("MIGA"), seeking a ruling that any award received from his own uninsured motorist coverage did not reduce MIGA's obligation.

¶5.     MIGA moved for summary judgment, arguing that – pursuant to Mississippi Code Section 83-23-123 – MIGA's obligation must be reduced by State Farm's payment of UM benefits, and since State Farm's payment of $300,000 was equal to MIGA's entire statutory limit of $300,000, MIGA had no further obligation. The trial court agreed, and granted MIGA's motion for summary judgment. Leitch appealed, and the Court of Appeals affirmed. Leitch filed a petition for writ of certiorari, which we granted in order to address our prior opinion in *Mississippi Insurance Guaranty Assocation v. Cole ex rel. Dillon*, 954 So. 2d 407 (Miss. 2007).

## ANALYSIS

¶6.     On appeal, this Court:

> employs a de novo standard of review in reviewing a lower court's grant of summary judgment motion. Summary judgment is appropriate if the evidence before the Court – admissions in the pleadings, answers to interrogatories,

2

depositions, affidavits, etc.– shows there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. This Court does not try issues on a Rule 56 motion, but only determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than the purpose of resolving that issue.

***Miss. Gaming Comm'n v. Treasured Arts***, 699 So. 2d 936, 938 (Miss. 1997)) (internal citations omitted).

¶7.     According to Mississippi Code Section 83-23-103, "[t]he purpose of [MIGA] is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . . " Miss. Code Ann. § 83-23-103 (Rev. 1999). Furthermore, Mississippi Code Section 83-23-107 requires that the MIGA statute "shall be liberally construed to effect the purpose under § 83-23-103. . . ." Miss. Code Ann. § 83-23-107 (Rev. 1999). Accordingly, this Court has held:

> The Mississippi Insurance Guaranty Association Law was enacted to protect policy holders of certain kinds of insurance in the event of their insurer's insolvency. MIGA is a statutorily-created unincorporated association consisting of insurance companies doing business in Mississippi. Each solvent insurer doing business in this state is assessed a pro rata share of amounts paid on behalf of insolvent insurers. MIGA is prohibited by statute from paying anything other than a covered claim, and the statute further requires that all other sources of insurance must be exhausted before looking to MIGA for any coverage.

***Miss. Ins. Guar. Ass'n v. Byars***, 614 So. 2d 959, 963 (Miss. 1993) (internal citations omitted).

¶8.     The matter before us today is controlled by the following statutory provision:

> Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a

3

covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy.

Miss. Code Ann. § 83-23-123(1) (Rev. 1999). In applying the statute, we first must determine whether Leitch had "a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer. . . ." If so, we then must determine whether that claim was also "a covered claim," that is to say, a claim covered by the MIGA statutes.

¶9. As already stated, Leitch was covered by a State Farm insurance policy which included uninsured motorist coverage. There is no assertion that State Farm is "an insolvent insurer." Thus, we see no logical argument distinguishing Leitch's claim against State Farm from the statutory language: "a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer. . . ." *Id*.

¶10. We next must determine whether Leitch's claim against State Farm was also a "covered claim," a term defined by statute as follows:

> an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event, provided that for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount awarded as punitive or exemplary damages; or sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise and shall preclude recovery thereof from the insured of any insolvent carrier to the extent of the policy limits.

Miss. Code Ann. § 83-23-109(f) (Rev. 1999).

4

¶11.    The very basis of Leitch's suit against MIGA is his assertion that his claim is a "covered claim," that is, that it is covered by the MIGA statutes.  As recited in the facts above, at the time of the accident, the H-G&F truck was insured by Reliance Insurance Company, which has since been declared an insolvent insurer within the meaning of Section 83-23-109 of the Mississippi Code.  Thus, we find Leitch's claim is unquestionably a "covered claim," that is, a claim against MIGA.

¶12.    Because Leitch has a claim against his uninsured motorist carrier, State Farm, and a "covered claim" – as that term is defined in the MIGA statutes – we must apply the following mandatory statutory language:  "Any amount payable on a covered claim under this article shall be reduced by the amount of any recovery under such insurance policy."  Miss. Code Ann. § 83-23-123(1) (Rev. 1999).  In restating the statutory language and inserting the appropriate nomenclature, the statute reads: "Any amount payable [by MIGA] shall be reduced by the amount of any recovery [from State Farm]." Miss. Code Ann. § 83-23-123(1) (Rev. 1999).

¶13.    Leitch cites our decision in *Mississippi Insurance Guaranty Assocation v. Cole ex rel. Dillon*, 954 So. 2d 407, 414 (Miss. 2007), for the proposition that his settlement with State Farm should not diminish MIGA's coverage or obligation to pay. In *Cole*, the plaintiff brought a medical-malpractice action against her treating physician, her physician's practice group, and the community hospital where she was treated. *Id*. The plaintiff settled with the physician and the practice group. After the suit had been filed, the hospital's insurer became insolvent. *Id*. MIGA defended the hospital and filed a motion for summary judgment arguing that a joint tortfeasor's solvent insurance coverage had to be exhausted before it had any

5

responsibility to pay. *Id*. Thus, under MIGA's analysis of the statute, the settlement between the plaintiff, the physician, and the practice group --  which was in excess of MIGA's $300,000 statutory maximum obligation -- relieved MIGA of any responsibility to pay. *Id*.

¶14.     We held that the plaintiff's claims against the doctor and the practice group were not "covered claims" as contemplated by the statute, because their insurance carrier remained solvent. Therefore, "these defendants never had an insolvent insurer and thus failed to satisfy the definition of 'covered claim.'" *Id.* at 413.  The Court then reasoned that, because these were not "covered claims," the plaintiff was not required to exhaust her remedies through these policies pursuant to Mississippi Code Section 83-23-123(1), nor would any recovery from those policies reduce MIGA's obligation. *Id.* at 413-414.

¶15.     Although our result in *Cole* was correct, our reasoning requires clarification.  Our analysis should have focused on determining whether the plaintiff's  "covered claim" (as defined in the MIGA statutes) was the same claim as the plaintiff's claim against each of the other insured defendants.  For MIGA to have a statutory obligation and authority to pay, any "claim" against a solvent insurer that is the same as the "covered claim" against MIGA must first be exhausted.  Miss. Code Ann. § 83-23-123(1) (Rev. 1999).  We here repeat the language of the statute for clarity: "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, <u>which is also</u> a covered claim . . . ." *Id*. (emphasis added).  Although the defendants in *Cole* were joint tortfeasors, they were not "insurers," and the respective claims against them were not the same.  For the statute to have application, the covered claim against MIGA must also be "a claim against an insurer . . . ."  Miss Code Ann. § 83-23-123(1) (Rev. 1999).  Although the

6

plaintiff in **Cole** had claims against other defendants, she had no claim against a solvent insurer "which [was] also a covered claim . . . ." **Id**. (emphasis added). Thus, our holding in **Cole** was properly based on the fact that the plaintiff's "covered claim"(inherited by MIGA from the hospital's insolvent insurer) was not also a claim the plaintiff had against a solvent insurer.

¶16.   The case before us today presents a plaintiff who made a claim against State Farm (a solvent insurer) which is the same as the "covered claim" he now pursues against MIGA. The maximum amount payable on a "covered claim" is $300,000. Miss. Code Ann. § 83-23-115((1)(a)(iii). According to the statute, "[a]ny amount payable on a covered claim . . . shall be reduced by the amount of any recovery under [the State Farm] policy." Miss. Code Ann. § 83-23-123(1). Accordingly, MIGA is statutorily required to reduce the "amount payable on [Leitch's] covered claim . . . by the amount of any recovery under [the State Farm] insurance policy."

¶17.   When we are required to interpret a constitutional statute, our duty is to give full effect and unfettered deference to the statutory language chosen by the Legislature. Although our interpretations are not controlled by the decisions of other jurisdictions, they aid us in our determination of what is a reasonable interpretation – particularly where those other jurisdictions have interpreted the same or substantially similar language. Our decision today is in accord with numerous other state court decisions.[1]

---

[1]*See e.g.* **Colo. Ins. Guar. Assoc. v. Menor**, 166 P.3d 205 (Colo. App. 2007); **Robinson v. Gailno**, 275 Conn. 290, 880 A.2d 127 (Conn. 2005); **Bird v. Norpac Foods, Inc.** 325 Or. 55 (Or. 1997); **Zhou v. Jennifer Mall Rest., Inc.** 699 A.2d 348 (D.C. 1996); **Pinkham v. Morrill**, 622 A.2d 90 (Me. 1993); **Burke v. Valley Lines, Inc.**, 421 Pa. Super. 362, 617 A.2d 1335 (Pa. Super. Ct. 1992)**; Hawkins v. Ky. Ins. Guar. Assoc.**, 838 S.W.2d 410 (Ky. Ct. App. 1992); **Stecher v. Iowa**

¶18. Assuming Leitch's damages amount to be $300,000 or more, the "amount payable on a covered claim" by MIGA would be $300,000, because the maximum amount payable by MIGA is $300,000;[2] and that full amount has been discharged by the $300,000 payment to Leitch from State Farm. *See* Miss. Code Ann. § 83-23-123(1). Accordingly, the trial court was correct in granting summary judgment, as was the Court of Appeals in affirming the trial court's ruling.

**CONCLUSION**

¶19. Because Mississippi Code Section 83-23-123(1) specifically provides that "[a]ny amount payable [by MIGA] on a covered claim . . . shall be reduced by the amount of any recovery" from "an insurance policy other than a policy of an insolvent insurer [State Farm]," MIGA is required to reduce the amount payable to Leitch by the amount of State Farm's uninsured motorist payment. Since the $300,000 payment by State Farm requires a reduction of $300,000 in MIGA's obligation -- and since MIGA's statutory cap is $300,000 -- the judgment of the Court of Appeals and the trial court's grant of summary judgment must be, and hereby are, affirmed.

---

*Ins. Guar. Assoc.*, 465 N.W. 2d 887 (Iowa 1991); *McMahon v. Caravan Refrigerated Cargo, Inc.*, 406 Pa. Super. 303, 594 A.2d 349 (Pa. Super. Ct. 1991); *Northland Ins. Co. v. Va. Prop. and Cas. Ins. Guar. Assoc.*, 240 Va. 115, 392 S.E.2d 682 (Va. 1990); *Witkowski v. Brown*, 376 A.2d 669 (Del. Super. Ct. 1989); *Blackwell v. Pa. Ins. Guar. Assoc.*, 390 Pa. Super. 31, 567 A.2d 1103 (Pa. Super. Ct. 1989); *Rinehart v. Hartford Cas. Ins. Co.*, 91 N.C. App. 368, 371 S.E.2d 788 (N.C. Ct. App. 1988); *Ins. Comm'r of the State of Md. v. Prop. and Cas. Ins. Guar. Corp.*, 313 Md. 518, 546 A.2d 458 (Md. 1987); *Vokey v. Mass. Ins. Insolvency Fund*, 381 Mass. 386, 409 N.E.2d 783 (Mass. 1980); *Prutzman v. Armstrong*, 90 Wash. 2d 118, 579 P.2d 359 (Wash. 1978); *Lucas v. Ill. Ins. Guar. Fund*, 52 Ill. App. 3d 237, 367 N.E.2d 469, 10 Ill. 81 (Ill. App. Ct. 1977).

[2]*See* Miss. Code Ann. § 83-23-115(1)(a)(iii) (Rev. 1999).

¶20.   **AFFIRMED**.

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶21.   Though at first blush the majority's opinion seems logical, and is exceedingly well-written, in my view its reasoning is fundamentally flawed.

¶22.   Leitch filed two civil actions in the Circuit Court of DeSoto County, both of which arose from the vehicular crash in which he avers that he was seriously injured. The first is a typical personal injury action against a truck driver and his employer. Leitch claimed in that action that these parties negligently caused the accident and that they were liable to him for his resulting damages. Upon determining that the liability insurance carrier for these parties, Reliance Insurance Company, was insolvent, Leitch joined his own automobile liability insurance carrier, State Farm Mutual Automobile Insurance Company, as a named defendant, invoking the uninsured motorist coverage, in the amount of $300,000, that was part and parcel of his State Farm policy. The second civil action, which is the one now before this Court, is a declaratory judgment suit against Mississippi Insurance Guaranty Association in which Leitch sought a circuit court ruling that the payment he had received from his uninsured motorist carrier did not offset funds that were potentially available to him from the guaranty association (MIGA).

¶23.   The circuit court decided that an offset applies, and that the full amount that would have been available from MIGA is offset by the payment Leitch received from State Farm. Coincidentally, the maximum statutory coverage from MIGA is $300,000, the same amount

9

as Leitch's uninsured motorist coverage through State Farm. Miss. Code Ann. § 83-23-115(1)(a)(iii) (Rev. 1999). The Court of Appeals agreed with the circuit court, as do my esteemed colleagues in the majority. With respect, I do not.

¶24. A correct determination of this issue requires, in my judgment, a different interpretation of Mississippi Code Section 83-23-123(1) than that made by the majority. A comprehensive analysis, with benefit of all relevant facts in this case, is not possible because of insufficient information in the record before us. Of greatest importance in this regard is the fact that there has been neither a judicial determination nor a stipulation by the parties of the total amount of compensatory damages, if any, due Leitch from the alleged tortfeasors. Of course, such a determination can, and may eventually, be made by a DeSoto County jury in the first civil action filed by Leitch. This Court is hampered in its analysis by our not knowing the total amount of compensation for damages, if any, to which Leitch is entitled.

¶25. State Farm, standing in the shoes of Reliance as a liability insurance carrier for the alleged tortfeasors, bought its peace by settling with Leitch for its policy limits of $300,000. This Court is further hindered in its analysis by not knowing how much liability insurance the alleged tortfeasors would have had through Reliance, had Reliance been solvent at times relevant to Leitch's accident.

¶26. If Reliance's applicable policy limits exceeded $300,000, then the uninsured motorist coverage available to Leitch through State Farm filled Reliance's empty shoes, but only partially. If the compensation due to Leitch from the tortfeasors exceeds $300,000, then it falls upon MIGA to complete the filling of Reliance's shoes in an amount sufficient to pay Leitch's remaining, unpaid damages, but not to exceed MIGA's statutory cap of $300,000.

10

¶27. In applying Section 83-23-123(1) to the available facts, it is necessary to understand that Leitch never had a claim, and does not now have a claim, against *the insurance company* in whose shoes State Farm and MIGA stand, namely, Reliance. Under the circumstance in which Leitch found himself after his accident, the only insurance company that he had a right to sue was State Farm, and his right to sue that company would not have come to fruition if Reliance had been solvent, or if a solvent Reliance's applicable coverage had proven insufficient to compensate Leitch for all damages for which the alleged tortfeasors were found to be liable.

¶28. The majority correctly finds that, "the Mississippi Insurance Guaranty Association Law was enacted *to protect policy holders* of certain kinds of insurance in the event of their insurer's insolvency." ***Miss. Ins. Guar. Ass'n v. Byars,*** 614 So. 2d 959, 963 (Miss. 1993) (Emphasis added.) The benefits that Leitch may receive through the guaranty association will come to him indirectly, inasmuch as the guaranty association exists for the protection of the person and company who Leitch claims are responsible for his injuries. Although they would have relied on Reliance if it had been solvent, they must now rely, at least in part, on the guaranty association.

¶29. Since we do not know the amount of Leitch's damages attributable to the alleged tortfeasors, it may be helpful to assume, for the purposes of analysis, an amount that exceeds all of the coverage afforded by State Farm and MIGA in order to understand Code Section 83-23-123(1) correctly. Thus, assume that Leitch's total damages due from the alleged tortfeasors amount to $1,000,000.

11

¶30. State Farm, through its uninsured motorist coverage in Leitch's policy, has paid $300,000 of the $1,000,000 on behalf of the alleged tortfeasors. Therefore, in this scenario, $700,000 remains due and payable to Leitch from the parties responsible for the accident and resulting injuries; $700,000 is the "amount payable" mentioned in the second sentence of Section 83-23-123(1).

¶31. Leitch has followed the dictates of the statute by first exhausting his rights under his State Farm policy. Therefore, the guaranty association is entitled to have its obligation reduced by the $300,000 amount received by Leitch from State Farm. Accordingly, the remaining, unpaid amount due to Leitch from the alleged tortfeasors is $400,000. However, the guaranty association is limited to paying an amount no greater than the statutory cap of $300,000. Under this hypothetical scenario in which Leitch's total adjudicated or stipulated damages are $1,000,000, the guaranty association must pay Leitch $300,000, leaving an unpaid amount of $100,000 still due and owing to Leitch from the alleged tortfeasors.

¶32. The word *offset* is nowhere to be found in the cited statute. In his declaratory judgment action, Leitch asks the courts of this state to tell him and the guaranty association whether an offset applies. While it is true that there is an applicable *reduction,* or *credit,* that applies to the totality of Leitch's damages, that reduction does not "cancel out" MIGA's obligation to take up where State Farm left off in paying whatever damages are ultimately attributed to the alleged tortfeasors. In this case, the uninsured motorist coverage comes first under the statute, and is paid in addition to, not instead of, MIGA's obligation, within its statutorily-defined limits.

12

¶33. Because I believe the foregoing to be the correct analysis, I respectfully dissent from the contrary conclusion of the majority, and I would reverse the trial court's grant of summary judgment in favor of MIGA and the Court of Appeals's affirmance thereof.

**GRAVES, P.J., JOINS THIS OPINION IN PART.**